UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | CRIMINAL NO. 1-22-cr-38 (CKK) |
| | : | |
| JOLENE EICHER | : | |
| | : | |
| _____ | : | |

## MOTION TO TRANSFER VENUE

Jolene Eicher, through counsel, respectfully moves this Honorable Court for a transfer of venue for her trial under the Fifth and Sixth Amendments and pursuant to Rule 21(a) of the Federal Rules of Criminal Procedure, to a jurisdiction capable of seating an impartial jury. In support of this motion, Ms Eicher states as follows:

1. Jolene Eicher is charged by Information with one count each of: Entering and Remaining in a Restricted Building, 18 U.S.C. § 1752(a)(1); Disorderly and Disruptive Conduct in a Restricted Building, 18 U.S.C. § 1752(a)(2); Violent Entry and Disorderly Conduct on a Capitol Building, 40 U.S.C. §5104(e)(2(D); and Parading, Demonstrating, or Picketing in a Capitol Building, 40 U.S.C. §5104(e)(2)(G). Trial is currently set for 23 February, 2023.

2. Ms Eicher requests this Honorable Court transfer the trial to a jurisdiction conforming to the concerns of Federal Rule of Criminal Procedure Rule 21 (a). Rule 21(a) states, "…the court must transfer the proceeding against the defendant to another district if the court is satisfied that so great a prejudice against the defendant exists in the transferring district that the defendant cannot obtain a fair and impartial trial there." Ms Eicher states that her trial proceeding in this district creates the very real potential that her right to a fair and impartial

is in jeopardy, and this Court should transfer her matter to a more appropriate jurisdiction for the following reasons.

**MEMORANDUM IN SUPPORT OF MOTION TO TRANSFER VENUE**

I.   Legal Analysis

It has been a long-standing principle of American jurisprudence that fairness and objectivity are the very lifeblood of our criminal justice system without which our cherished motto of "a nation of laws" becomes a myth. "The theory in our system of law is that conclusions to be reached in a case will be induced only by evidence and argument in open court, and not by any outside influence[.]" *Patterson v. Colorado*, 205 U.S. 454, 462 (1907). As far back as 1955, Justice Hugo Black observed that the American justice system "has always endeavored to prevent even the probability of unfairness." *In re Murchison*, 349 U.S. 133, 136 (1955). Incorporating these principles, Federal Rule of Criminal Procedure 21(a) mandates that the trial court "must transfer [a criminal] proceeding . . . if the court is satisfied that so great a prejudice against the defendant exists in the transferring district that the defendant cannot obtain a fair and impartial trial there." Fed. R. Crim. P. 21(a).

Factors to be considered in whether to grant a venue change requested based upon prejudicial pretrial publicity are the size and characteristics of the community, the nature and extent of pretrial publicity, the proximity between the publicity and the trial, and evidence of juror partiality. *United States v. Skilling*, 561 U.S. 358, 378-381 (2010). In some cases, a potential jury pool can be determined to be irredeemably biased when the alleged crime results in "effects . . . on [a] community [that] are so profound and pervasive that no detailed discussion of the [pretrial publicity and juror partiality] evidence is necessary." *United States v. McVeigh*, 918 F. Supp. 1467,

1470 (W.D. Okla. 1996) (summarily finding that a trial of Oklahoma City bombing suspects in federal court in Oklahoma City (Western District of Oklahoma) would be constitutionally unfair).

II. Argument

**A transfer is required because of circumstances unique to this case.**

Ms Eicher's case is tied to an event that was so impactful on the psyche of District residents that it is *per se* impossible for local jurors to reach a fair and impartial verdict. District residents have been , and continue to be, bombarded with wall-to-wall coverage of events of 6th January, related arrests, criminal charges, congressional hearings, and sensational journalism. As has been previously documented in these matters, sections of the District were shut down for a period of weeks as roughly 25,000 National Guard troops occupied the Capitol in armored vehicles or on foot while wearing M-16s. The Mayor of D.C. declared a state of emergency and implemented a 6 p.m. curfew for weeks. Speaker Pelosi shut down all access to the Capitol into June of 2021. Bridges and roads into the District were closed off for a period of time. The Department of Homeland Security declared that government offices were potential targets of "Domestic Violent Extremists." The Court cannot ignore the impact, both in the practical sense, and the emotional effects, the events of 6th January had, and continue to have, on this community.

In contrast though to other discussions that taken place on this issue, Ms Eicher wishes to be absolutely clear that we are not suggesting the citizens of the District of Columbia are inherently biased: far from it. We are submitting to the Court the idea that the very nature and circumstances of the events of that day had an effect on this community that is "so profound and pervasive" that it would be nearly impossible to seat a fair and impartial jury. See, e.g., *United States v. McVeigh*, 918 F. Supp. 1467, 1470 (W.D. Okla. 1996); *United States v. Awadallah*, 457 F. Supp. 2d 246

(S.D.N.Y. 2006) (suggesting that had the defendant, who was charged with perjury, actually participated in the 9-11 attacks on New York, "the effects that a massive, disastrous event has wrought on the jury pool" would require a change of venue).[1]

As we discussed above, the area directly affected by the events of 6th January was not limited to the immediate vicinity of Capitol Hill, but rather to the city at-large. These matters before the courts in this courthouse then present an unusual situation only seen rarely in other cases in this nation. In more everyday cases heard by these courts, a standard generic *voir dire* enquiry asks, in one form or another, "(D)oes the (prospective juror) have any knowledge of the matters related to this trial?" Or, going one step further: "(I)s the (prospective juror) familiar with the neighborhood underlying the allegations in this trial?" Normally these enquiries are directed more at a specific neighborhood, but as we have seen, it is not the single neighborhood of Capitol Hill that was affected: Rather the massive affect the events of that day had on the city as a whole, including the ripple effects still being felt. Thus, it is not merely the residents of Capitol Hill that raise continuing Rule 21(a) concerns, but the residents of the whole city.

But it is not just a singular event occuring in the past that presents the concerns here. The District lives with the echoes of 6th January in the present. Even at the time of this writing, The January 6th Commission is still in our headlines on an almost daily basis. The fallout and arguments from the deniers of the election results of 2020 are never far away from any political discourse. We would

---

[1] In McVeigh, the district judge made two rulings on venue changes. His first decision was to grant a change a venue from the Western District of Oklahoma, where Oklahoma City is located. McVeigh, 918 F. Supp. at 1470. That the decision was based on the obvious impact that the Oklahoma City bombing had on the community. The second, and more difficult issue, for the district judge, was whether to transfer the trial to the Eastern District of Oklahoma, or to move the case out of state. In deciding to transfer the trial to Colorado, the district judge ruled that the "emotional burden of the explosion and its consequences" and the community prejudice against the defendants necessitated a transfer out of state. Id. at 1473.

submit to the Court that the concerns we bring before the Court do not merely echo those of the *MacVeigh* and *Awadallah* courts, but actually go much further in that the passage of time allowed citizens of those communities to put some distance between themselves the underlying events permitting the wounds to mend somewhat, whereas the citizens of this city are under constant media assault on a daily basis and are not afforded the luxury of healing.

In making these arguments, we again stress to point out to the Court the argument we are *not* pursuing. Undersigned counsel has been trying cases in this jurisdiction for twenty years. In that time, it has become apparent and a constant topic of discussion within this defense bar regarding the remarkable ability of DC residents serving as jurors sincerely endeavoring to put aside personal concerns and follow the instructions provided by any particular court[2]. The concern here, and the argument being made, is that the scale of the impact and the consistent reminder of the assault on this city placed on all District residents and prospective jurors is unparalled, and the inquiry should focus on whether it is humanly possible to eradicate the subconscious and adjudicate any of these matters with the requisite objectivity which our system of justice requires. We submit to the Court that merely enquiring of these prospective jurors whether they can be fair and impartial misses the point. The question for the Court is not whether the jury pool believes itself to be free of partiality, but given the circumstances presented, whether the Court can justifiably rely on the premise that the experiences of the District's citizenry have not irretrievably affected the outlook of the potential pool. This is exactly the fear of the *McVeigh* and *Awadallah* courts. But the riot of 6th January created a situation that goes far beyond Oklahoma City and 9/11.

---

[2] It should be noted that despite the assumption of impartiality on the part of prospective jurors, courts still routinely as ask the two "familiarity" questions and will consider striking a juror where these issues raise a concern.

**Rule of Law**

The era of Trump has brought to question the concept of "Rule of law" or as we sometimes referred to ourselves as a "Nation of Laws." The allegations against those that broke into the U.S. Capitol, entering chambers and offices, and halting the certification of the election constitute a very sobering idea. For the hard-core few that came to the District to prevent the peaceful transition of power, nothing less than an attack on the very fabric of our social contract was being contemplated. For these individuals, *the law* was not only to be ignored but to be substantively attacked. Only their subjective partisan goals were of any import. In response to those who would attack the rule of law, we propose the Court has an opportunity to uphold our guiding principles and view Fed R. Crim Procedure 21(a) as a well-tried mechanism of ensuring the spectre of unwanted subjectivity and partiality is absent in this criminal proceeding and providing a trial that is free from any accusation of taint. Transferring Jolene Eicher's trial to a jurisdiction free from all such concerns would effectively honor the very notions these courts were designed to protect. We ask the Court to ensure the free and impartial trial contemplated by the 6th Amendment.

**Ms Eicher's trial should be relocated to the Western District of Virginia.**

Ms Eicher's trial should be relocated to the Western District of Virginia (WDVA) for the following reasons. Firstly, Ms Eicher is a Virginia resident. It makes more sense for her to be tried by a jury of her peers, fellow Virginians, than those of a jurisdiction halfway across the country. Moreover, as a practical matter, it would have no additional impact on Ms Eicher's trial travel plans than if the trial remains in the District of Columbia. Secondly, WDVA would represent a venue much

more firewalled from the influences discussed above than the Eastern District of Virginia (EDVA). From the EDVA courthouse in Alexandria VA, it is almost possible to see the Capitol Building in DC. Much of the residents of this part of Virginia were as affected by the events of 6 January as those in DC itself. In fact, it would be entirely fair to view the residents of metro-area Virginia; Arlington, Fairfax, Loudoun, Prince William counties as well as Alexandria City as de-facto DC area residents with all the same prospective jurors concerns as DC residents.

The same would be true of any of the neighboring U.S. Courthouses. Given these concerns we submit that the Western District of Virginia seems like an acceptable compromise.

WHEREFORE, Jolene Eicher, for the reasons shown above, respectfully moves this Honorable Court to transfer venue to the Western District of Virginia, pursuant to the Fifth and Sixth Amendments and Federal Rule of Criminal Procedure 21(a).

Respectfully Submitted,

/s/ *Peter A. Cooper*

Peter A. Cooper, (#478-082)
400 Fifth Street, NW.
Suite 350
Washington DC 20001
pcooper@petercooperlaw.com
Counsel for Jolene Eicher

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a copy of the foregoing Motion to Transfer Venue is being filed via the Electronic Court Filing System (ECF), causing a copy to be served upon government counsel of record, this 12th day of August, 2022.

/s/ *Peter A. Cooper*

Peter A. Cooper