# United States District Court
# District of Columbia

| | |
|---|---|
| United States of America ) | |
| ) | |
| vs. ) | Case No. 1:22-CR-00038-BAH |
| ) | |
| Jolene Eicher ) | |

## Motion for Partial Attorney Conducted *Voir dire* and Memorandum in Support

One important mechanism for ensuring impartiality is *voir dire*, which enables the *parties* to probe potential jurors for prejudice.

<u>Dyer v. Calderon</u>, 151 F.3d 970, 973 (9th Cir. 1998)(emphasis added)

Matthew Hill
Assistant Federal Public Defender
201 Abingdon Pl
Suite 201
Abingdon, VA  24210

Jolene Eicher is before the Court on an information alleging crimes committed in and around the United States Capitol building on January 6, 2021. The events of that day have such notoriety that the date itself conjures images and stirs deep emotional reactions from all Americans. Those emotions are as deeply felt, the memories equally powerful, as those associated with other infamous dates, like December 7 or September 11. It is those deeply held beliefs and reactions of likely all members of the venire that must be explored so that Ms. Eicher's right to a fair and impartial jury is maintained. The best way to protect that right is by allowing the parties an opportunity to conduct a portion of the *voir dire* process.

To further the goals of justice, including the right of the accused to have her innocence or guilt determined by a body of her peers that is unbiased and impartial, Jolene Eicher requests that the court permit each side in this case thirty minutes of attorney conducted *voir dire* as a complement, and in addition to the court's *voir dire*. Supplemental attorney conducted *voir dire*, while not statutorily or constitutionally mandated, will add an important dimension to the *voir dire* process and is in the interest of justice. It will most effectively advance the goal of obtaining an unbiased and impartial jury through the intelligent exercise of peremptory challenges by counsel and full and informed consideration by the court of any challenges for cause which may be made.

## ARGUMENT

One right the constitution confers on a defendant is the right to an impartial jury. *Voir dire* plays a critical function in protecting this constitutional right.

*Rosales-Lopez v. United States*, 451 U.S. 182, 188 (1981). Because of the crucial function of the peremptory challenge in acquiring an impartial jury, a "system that prevents or embarrasses the full, unrestricted exercise of that right of challenge must be condemned." *Pointer v. United States*, 151 U.S. 396, 408 (1894).

Rule 24(a) of the Federal Rules of Criminal Procedure grants the court broad discretion in conducting the *voir dire* examination. Included within the broad discretion is the right to control who conducts the *voir dire*; the rule specifically provides that the court may either permit counsel to conduct the entire *voir dire* examination, permit counsel to conduct some *voir dire* examination to supplement initial *voir dire* examination by the court, or permit no *voir dire* examination by counsel and conduct the entire *voir dire* examination itself. *See* Fed. R. Crim. Pro. 24(a).

The court's discretion under Rule 24(a) is not without limit. It is "subject to the essential demands of fairness." *Aldridge v. United States*, 283 U.S. 308, 310 (1931). There are several reasons attorney conducted *voir dire* advances this goal.

### A. ATTORNEY CONDUCTED *VOIR DIRE* WILL PERMIT THE MOST INTELLIGENT EXERCISE OF PEREMPTORY CHALLENGES.

*1. The Importance of Voir dire to Peremptory Challenges.*

The dual purpose of *voir dire* is to provide enough information to exercise challenges for cause and enough information to exercise peremptory challenges. *Mu'Min v. Virginia*, 500 U.S. 415, 431 (1991). These challenges are intended to advance the goal of meeting the constitutional requirement of an impartial jury.

Challenges for cause are narrow in scope; they "permit rejection of jurors on narrowly specified provable and legally cognizable bas[e]s of partiality." *Swain v. Alabama*, 380 U.S. 202, 220 (1965). Peremptory challenges, on the other hand, can be exercised "without a reason stated, without inquiry, and without being subject to the court's control." *Id.* at 220. *But see Batson v. Kentucky*, 476 U.S. 79 (1986) and its progeny.

Because of the narrow scope of challenges for cause, the peremptory challenge is often the most useful and important tool for a litigant in picking an impartial jury. As noted by the Supreme Court in *Swain*, "[t]he *voir dire* in American trials tends to be extensive and probing, operating as a predicate for the exercise of peremptories. The persistence of peremptories and their extensive use demonstrate the long and widely held belief that peremptory challenge is a necessary part of trial by jury." *Swain*, 380 U.S. at 218-219.

In order for a peremptory challenge to serve its purposes, it must be intelligently exercised. This requires that the parties obtain sufficient information from the potential jurors upon which to base their challenges. *Art Press, Ltd. v. Western Printing Machinery Co.*, 791 F.2d 616, 618 (7th Cir. 1986). As one court has noted, "[p]eremptory challenges are worthless if trial counsel is not afforded an opportunity to gain the necessary information upon which to base such strikes." *United States v. Ledee*, 549 F.2d 990, 993 (5th Cir.), *cert. denied*, 434 U.S. 902 (1977). *See also United States v. Corey*, 625 F.2d 704, 707 (5th Cir.

1980) ("[t]his court has previously stressed that *voir dire* examination not conducted by counsel has little meaning").

2.  *The Contribution of The Attorneys' More In-Depth Knowledge of the Case.*

One reason why a short period of attorney conducted *voir dire* after the court's general *voir dire* will contribute to more complete information about the potential jurors is the attorneys' more in-depth knowledge of the case. Important follow-up questions are more likely to occur to an advocate than a judge for several reasons, including the fact that a judge "does not have the advocate's awareness that soon he will be making peremptory challenges based on inferences from what prospective jurors have said" and the fact that "the judge does not know the case of either party in detail, so that he cannot realize when responses have opened areas for further inquiry." Babcock, *Voir dire: Preserving "Its Wonderful Power"*, 27 Stan. L. Rev. 545, 549 (1975). The Fifth Circuit has recognized:

> While Federal Rule of Criminal Procedure 24(a) gives wide discretion to the trial court, *voir dire* may have little meaning if it is not conducted at least in part by counsel. The "federal" practice of almost exclusive *voir dire* examination by the court does not take into account the fact that it is the parties, rather than the court, who have a full grasp of the nuances and the strength and weaknesses of the case. . . Experience indicates that in the majority of situations questioning by counsel would be more likely to fulfill this need [for information upon which to base the intelligent exercise of peremptory challenges] than an exclusive examination in general terms by the trial court.

*United States v. Ible,* 630 F.2d 389, 395 (5th Cir. 1980). *Accord United States v. Corey*, 625 F.2d at 707; *United States v. Ledee*, 549 F.2d at 993.

*Voir dire* conducted solely by the court interferes with the intelligent exercise of peremptory challenges because the court is usually less familiar with the facts and nuances of the case. Attorneys have been working for months on the case. They are most likely to know the areas of questioning that must be explored further in order to uncover the prejudices that are most pertinent to the evidence which will be presented at trial. They also act with an awareness that they will have to base peremptory challenges on the juror's answers.

3.   *The Contribution of the Attorneys' Different Relationship to Potential Jurors.*

Another reason why attorney conducted *voir dire*—in addition to court *voir dire*—will elicit more complete information from potential jurors arises from the attorneys' relationship to the jurors. Psychological studies suggest at least two differences between attorney-juror relationships and judge-juror relationships that should enable attorneys to obtain more or different information from some potential jurors. *See* Suggs and Sales, *Juror Self-Disclosure in the Voir dire: A Social Science Analysis*, 56 Ind. L.J. 245, 253-58 (1981).

The first difference which may have an impact is the difference in status between judges and attorneys. Psychological studies suggest two things about the relationship between self-disclosure and the status of an interviewer: people (1) tend to disclose more to a person who is perceived to have higher status than they, but (2) tend to disclose less if the status differential is too great. Suggs and Sales, *supra* at 253. In other words, a person is likely to provide the most self-

disclosure to a person who is perceived to have somewhat greater status but not such greater status that the juror finds it impossible to identify with the interviewer. *Id.* at 253-54.

This suggests that supplemental attorney conducted *voir dire* can add an important dimension to the *voir dire* process. Potential jurors come from widely varying social backgrounds, ranging from the unemployed, to employed blue collar workers who have only a high school education, to college students, to established and well-educated professionals. For some of these individuals, the relative "status" of judges and attorneys may be such as to make the judge most likely to obtain complete self-disclosure. But for others it may be the status differential with attorneys that will result in complete self-disclosure. By having both attorneys and the court conduct *voir dire*, self-disclosure is most likely to be maximized.

A second difference in the juror-attorney relationship and the juror-judge relationship is also significant. As one set of commentators has noted, "the judge has an extremely difficult role to fulfill, both intellectually and emotionally. He must be the arbiter of fine points of law, coordinate the activities of all parties to facilitate a just result and remain above interparty rivalries, all of which require that he remain aloof and emotionally detached." Suggs and Sales, *supra* p. 7, at 254. Attorneys are not so constrained. *See id.* This is reflected most superficially by the fact that it is the judge for whom jurors must stand upon her entry into the courtroom, not the attorneys.

This is important to the question of jurors' self-disclosure. Psychological studies show -- consistent with common sense -- that people tend to be less willing to talk and reveal themselves to those who must remain at least somewhat detached. Suggs and Sales, *supra*, at 254-55. Permitting the attorneys to conduct some follow-up *voir dire* in addition to the court's *voir dire* will counter this problem in the *voir dire* process.

Essentially, attorney conducted *voir dire* in addition to the court's *voir dire* takes advantage of both the attorneys' greater knowledge of the underlying facts of the case and the differences between the attorney-juror relationship and the judge-juror relationship. Permitting attorney conducted *voir dire* in addition to court *voir dire* will bring the best of both worlds to the process and maximize the information obtained in *voir dire*.

4.   *The Ability Of The Court To Control And Limit Voir dire Abuse.*

There is a concern expressed by some commentators that attorneys may abuse the *voir dire* process, either by seeking to improperly ingratiate themselves with jurors or argue their theory of the case or by showing no concern for efficiency. *See* Suggs and Sales, *supra*, at 250-51. The great advantage of allowing attorney conducted *voir dire* as a supplement to court *voir dire* is that the court can fairly and reasonably control and limit such abuse.

If the court begins by conducting its own *voir dire*, it can reasonably limit the *voir dire* it allows the attorneys to conduct. If the court has already conducted its own *voir dire*, the court can legitimately expect the attorneys not to repeat the

questions it has already asked and not to simply go on and on in an effort to establish rapport with the jurors. The court can rightfully demand that the attorneys limit themselves to new areas of examination or follow-up examination which has not already been covered and which is clearly relevant to the case at bar.

In addition, the court can legitimately place a specific time limit on attorney conducted *voir dire* when it begins with its own *voir dire*. The thirty-minute limit on *voir dire*, which is proposed in this motion is eminently justifiable when basic *voir dire* has already been conducted by the court. An attorney who is given only thirty minutes for additional *voir dire* examination is unlikely to waste his precious thirty minutes on mere prattling attempts at ingratiation which provide little, if any, actual information.

### B. ATTORNEY CONDUCTED *VOIR DIRE* WILL AID THE PARTIES IN COMPLYING WITH THE REQUIREMENTS OF *BATSON V. KENTUCKY*.

In *Batson v. Kentucky*, 476 U.S. 79 (1986), the Supreme Court held that the Equal Protection Clause prohibits challenging potential jurors "solely on account of their race or on the assumption that black jurors as a group will be unable to impartially to consider the State's case against a black defendant." *Id.* at 83; *See also United States v. Carter*, 111 F.3d 509, 512 (7th Cir. 1997). Thus, peremptory challenges must be made in a non-racially discriminatory manner in order to be constitutional. Discriminatory exercise of peremptory challenges on the basis of gender is also barred. *See J.E.B. v. Alabama ex rel. T.B.*, 511 U.S. 127 (1994); *United States v. Harris*, 197 F.3d 870, 873 (7th Cir. 1999).

*Batson* set up a system where a party may establish a prima facie case of discriminatory use of peremptory challenges.[1] First, a litigant must show that the opposing party has exercised peremptory challenges with intent to exclude members of a cognizable racial group or other protected class. *Id.* at 96. Second, a litigant may rely on the fact that the nature of peremptory strikes permits those who are inclined to discriminate to do so. *Id.* Finally, a litigant must show facts and other relevant circumstances that raise an inference that opposing counsel used peremptory strikes to exclude members of the group in question. *Id.* In deciding whether the litigant has made a prima facie showing, the trial court may consider all relevant circumstances, including the attorneys' questions and statements during the *voir dire* examination. Id. at 96-97.

Once a party makes a prima facie showing, the burden shifts to the opposing counsel to offer a neutral explanation for the challenge. *Id.* at 97. "[Counsel] must give a 'clear and reasonably specific' explanation of his 'legitimate reasons' for exercising the challenges." *Id.* at 98 n.20 (*quoting Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 258 (1981)).

Complete and effective *voir dire* is a basic premise which underlines the rationale of *Batson* and its progeny -- in two respects. First, a complete and effective *voir dire* eliminates any need to rely on generalizations and stereotypes

---

[1] After *Batson*, a string of Supreme Court cases extended its reach to parties other than the government. Criminal defendants and civil litigants are thus also barred from discriminating in the exercise of peremptory challenges. See *Georgia v. McCollum*, 505 U.S. 42 (1992); *Edmonson v. Leesville Concrete Co.*, 500 U.S. 614 (1991).

about people.  As the Supreme Court recognized in *J.E.B. v. Alabama ex rel. T.B.*, 511 U.S. 127 (1994):

> If conducted properly, *voir dire* can inform litigants about potential jurors, making reliance upon stereotypical and pejorative notions about a particular gender or race both unnecessary and unwise.  *Voir dire* provides a means of discovering actual or implied bias and a firmer basis upon which the parties may exercise their peremptory challenges intelligently.  *Id.* at 1429.  Simply put, there is no reason for counsel to rely on stereotypes and generalizations about people if he is permitted to ask specific questions about them.  The second way in which a complete and effective *voir dire* is a necessary premise to the *Batson* decision is that "the *voir dire* process aids litigants in their ability to articulate race-neutral explanations for their peremptory challenges."

*J.E.B.*, 511 U.S. 127, 143-44 n. 17.

Whether a litigant is trying to prove a prima facie case of discrimination or trying to rebut one, an in-depth and extensive *voir dire* is essential.  An attorney who must defend his peremptories should have sufficient information to provide a neutral explanation that will survive a *Batson* challenge.  The court in *Burks v. Borg*, 27 F.3d 1424 (9th Cir. 1994) stated that "the stronger the objective evidence of discrimination, the more we will require by way of verifiable facts" to rebut the challenge.  *Id.* at 1429-30.  If an attorney is required to explain and point to "verifiable facts", he should be allowed to obtain those facts.

This suggests the need for, and inherent fairness of, allowing attorney conducted *voir dire*.  If an attorney is going to be required to justify the inferences he draws and/or the impressions he gets from a juror's answers, he ought to be allowed to ask appropriate follow-up questions or ask questions in a way which will maximize the information he feels he needs to avoid relying on generalizations

and stereotypes. An attorney conducting *voir dire* is able to do this more effectively than the court because the attorney knows what factors he is concerned about and knows the underlying circumstances of the case and what characteristics in jurors are relevant to those circumstances.

### C. ATTORNEY CONDUCTED *VOIR DIRE* WILL HELP AVOID REVERSIBLE ERROR ON APPEAL.

The denial or impairment of the right to exercise peremptory challenges requires reversal of a conviction, without a showing of prejudice. *Lewis v. United States*, 146 U.S. 370, 376 (1892). A court which insists on conducting all *voir dire* itself may create grounds for reversal. The Ninth Circuit noted in *United States v. Baldwin*, 607 F.2d 1295 (9th Cir. 1979):

The trial judge [may] insist on conducting a *voir dire* examination, but if he does so, he must exercise a sound judicial discretion in the acceptance or rejection of supplemental questions proposed by counsel. Discretion is not properly exercised if the questions are not reasonably sufficient to test the jury for bias or partiality. *Id.* at 1297.

The court went on to reverse the defendant's conviction for failure of the trial court to conduct a *voir dire* that created "reasonable assurances that prejudice would be discovered if present." *Id.* at 1298.

Other convictions have been reversed for insufficient *voir dire* as well. *See, e.g., United States v. Contreras-Castro*, 825 F.2d 185, 187 (9th Cir. 1987) (failure to ask whether jurors would give greater credence to law enforcement officer testimony); *United States v. Washington*, 819 F.2d 221 (9th Cir. 1987) (failure to

ask whether jurors knew any of government's witnesses); *United States v. Ible*, 630 F.2d at 394-95 (failure to ask about jurors' moral or religious beliefs about alcohol); *United States v. Shavers*, 615 F.2d 266, 268 (5th Cir. 1980) (failure to ask jurors in assault case whether they had ever been victim of crime involving knife or gun); *United States v. Allsup*, 566 F.2d 68, 70 (9th Cir. 1977) (failure to ask jurors about views on insanity defense); *United States v. Segal*, 534 F.2d 578, 581 (3d Cir. 1976) (failure to ask jurors whether they had been employed by agency prosecuting case); *United States v. Dellinger*, 472 F.2d 340, 368-69 (7th Cir. 1972) (failure to ask jurors about attitudes toward Vietnam War, "youth culture", and relationship with law enforcement officers in case arising out of protest demonstration); *United States v. Poole*, 450 F.2d 1082, 1083-83 (3d Cir. 1971) (failure to ask jurors in bank robbery case whether they or any family member had been victim of robbery or other crime).

There will be no possibility of such a reversal if the court permits counsel thirty minutes of *voir dire* each. A defendant would hardly be in the position to complain about a failure of the court to ask a particular *voir dire* question when he himself failed to ask the question. Granting counsel thirty minutes for *voir dire* transfers the burden of asking mandatory *voir dire* questions to counsel and removes that burden from the court. Any risk of reversal due to insufficient *voir dire* will thereby be eliminated. *See, e.g,, United States v. Rigsby*, 45 F.3d 120, 125 (6th Cir. 1995) (rejecting claim of error based on failure of court to ask particular *voir dire* question where defense attorneys were allowed to conduct

additional *voir dire* after initial *voir dire* by court), *cert. denied*, 514 U.S. 1134 (1995).

## CONCLUSION

Ensuring that Ms. Eicher receives a fair trial is required under the Constitution. This court is uniquely positioned to help achieve that goal by allowing counsel to supplement this Court's questioning of the jury pool.

Respectfully Submitted,

**Jolene Eicher**
By Counsel

JUVAL O. SCOTT
Federal Public Defender
Western District of Virginia

**Matthew Hill**
Assistant Federal Public Defender
Missouri State Bar No. 47889
New Hampshire State Bar No. 18864
Arkansas State Bar No. 2018170
Attorney for the defendant
Federal Public Defender's Office
201 Abingdon Place
Abingdon, VA 24211
Telephone: (276) 619-6086
Fax: (276) 619-6090
matt_hill@fd.org

## Certificate of Service

The undersigned hereby certifies that this document was filed electronically and a copy will automatically be sent to all counsel of record by the CM/ECF system.

/s/Matthew Hill