UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA : | |
| : | |
| v. : | Case No. 22-cr-38 (BAH) |
| : | |
| JOLENE EICHER, : | |
| : | |
| Defendant. : | |

UNITED STATES' COMBINED RESPONSE TO
DEFENDANT'S OBJECTIONS TO EXHIBITS,
DEFENDANT'S SUPPLEMENT TO HER MOTION IN LIMINE,
AND THE COURT'S MAY 18, 2023 MINUTE ORDER

The United States submits this response to the defendant's Objections to Government's Exhibits, ECF No. 66; the defendant's Supplement to her Motion in Limine to Prohibit the Government from Arguing or Eliciting Testimony that Defendant is Part of the "Alt-Right," is an Extremist, or is on a Watch List, ECF No. 67; and the Court's May 18, 2023 Minute Order.[1]

**Responses to the Defendant's Objections to the Government's Exhibits**

1. **Exhibit 7**. Exhibit 7 is a photograph taken of blue cards that state, "TRUMP WON (AND EVERYONE KNOWS IT)." As the defendant acknowledges, the cards were found inside the pocket of her jacket, which was seized during the January 31, 2022 search of her residence. The jacket appears to be the same jacket that the defendant was wearing on January 6, 2021 and is shown in the videos and images of her on the Capitol grounds and inside the Capitol building.[2] The defendant asserts that the "TRUMP WON" cards found inside her jacket are not relevant to any trial issue. ECF No. 66 at 2. She is wrong. Rule 401 of the Federal Rules of Evidence provides

---

[1] Pursuant to the Court's May 19, 2023 Minute Order, the exhibits to which the defendant has objected have been provided digitally to the Court via USAfx fileshare.

[2] The jacket is Government Exhibit 2.

that evidence is relevant if "(a) it has any tendency to make a fact more or less probable than it would have been without the evidence; and (b) the fact is of consequence in determining the action." Fed. R. Evid. 401. In this case, Count Two of the Information requires proof that defendant acted with the "intent to impede or disrupt the orderly conduct of Government business or official functions," and Count Three requires proof that the defendant acted with the "intent to impede, disrupt, or disturb the orderly conduct of a session of Congress or either House of Congress." *See* Joint Proposed Jury Instructions (ECF No. 59-2); and Information (ECF No. 20). Therefore, statements or materials that concern the results of the 2020 presidential election are relevant to establish the defendant's state of mind when she entered the Capitol grounds and Capitol building on January 6, as well as the fact that the defendant acted "willfully and knowingly" when she engaged in conduct "that would disrupt the orderly business of Congress" when members convened on January 6, 2021 to count the electoral votes and certify the results of the 2020 election. While the defendant opines on whether she possessed the cards on January 6 or "did anything" with them, this stance does not change the fact that the photo of the cards is relevant to show what her state of mind and intentions were on January 6. Further, she is free to cross-examine the relevant witnesses regarding the timing of the search and whether or not they observed the defendant "[do] anything" with the cards in video footage from January 6.

      Similarly, although the defendant also objects to this exhibit pursuant to Rule 403 of the Federal Rules of Evidence, she offers no explanation as to how the evidence would cause unfair prejudice, undue delay, or mislead the jury—especially when knowledge and intent are elements of the offenses with which she is charged.

      2.    **<u>Exhibits 207 and 300</u>**. The defendant next objects to the montage videos that are identified as Exhibits 207 and 300. Exhibit 207 is a video montage frequently admitted in Capitol riot trials that combines self-authenticating Congressional Record entries and official video

recordings to show how Congress was disrupted on January 6, 2021.[3]  Exhibit 300 is a video montage comprised of United States Capitol Police close circuit video footage—various versions of which are frequently admitted in Capitol riot trials—depicting the general events of the riot. The defendant objects to both the authenticity and relevance of the exhibits.  Again, her objections are without merit.  First, the government will establish the authenticity of these exhibits at trial, either through self-authentication or a witness who will testify that the videos are what they purport to be, consistent with Rule 901.  Fed. R. Evid. 901(a).  Second, while the defendant asserts that she does not appear in exhibits 207 and 300 and that the videos show parts of the Capitol where she may not have been present on January 6, ECF No. 66 at 2–3, these exhibits will show the jury the larger events of January 6 and demonstrate how the actions of the mob, which included the defendant, impeded and disrupted the orderly conduct of government business and disrupted a session of Congress.  As such, the evidence is relevant to the charged offenses.

The defendant's objection based on Rule 403 is unsupported and incorrect in this instance again, because she has not shown that any evidence would be unfairly prejudicial, cause undue delay or mislead the jury, as required under Rule 403.

3. **Exhibit 400**.  The defendant next objects to her own Facebook posts on relevance grounds and a "waste of time" under Rule 403 of the Federal Rules of Evidence.  ECF No. 66 at 3. As set forth more specifically, the government submits that the defendant's posts are also relevant to establish her knowledge and intent in the commission of the charged offenses and would not cause undue delay.   The more specific discussion follows in relation to the individual postings

---

[3] In connection with discussions concerning a stipulation regarding Exhibit 207, and in global discovery, the government provided defense counsel with certifications regarding the video footage.

and exhibits.  Exhibit 400 is intended largely for identification purposes for the more specific exhibits.

4. **Exhibit 401**.  Exhibit 401 is a statement by the defendant on January 29, 2021, in which she discusses the former president's responsibility for January 6.  She refers to January 6 as "an insurrection" and compares the former president's responsibility to that of other leaders for "the violence from the BLM and Antifa, and even said there should be unrest."  It includes images of political leaders set against burning buildings, quotes about "unrest" and "uprisings," and statements by the former president about the presidential election having been stolen.  These statements are relevant to establish the defendant's knowledge and intent.  Additionally, the statements and images are not unfairly prejudicial, because they speak directly to the defendant's own knowledge of, presence at, and understanding of the events on January 6—which she referred to as "an insurrection."  The images, too, are not unfairly prejudicial in the context of a riot and attack on the Capitol that includes hours of assaults on law enforcement officers, destruction of the Capitol grounds, and members of Congress compelled to flee from the insurrectionists.  The defendant was recorded in the midst of those images, specifically during the attacks on officers and the Capitol.

5. **Exhibit 402**.  Exhibit 402 includes the defendant's statements on January 29 and January 30, 2021 about the former president's responsibility for January 6.  In them, she states that the participants "are responsible for their own actions, the fault rests on their shoulders and choices."  The statements are, again, relevant to establish the defendant's knowledge and intent for the crimes charged, and there is no showing that they would be unfairly prejudicial.  Also, to the extent the defendant argues that former President Trump's statements bear on her knowledge at the time of the offenses, Exhibit 402 is highly probative.

6.      **Exhibit 403**.  Exhibit 403 reflects a comment on a video that the defendant posted on Facebook concerning "what was going on 99% of the time" on January 6, 2021.  Thus, it similarly shows the defendant posting *specifically* about January 6 and expressing her knowledge and observations of what occurred at the Capitol that day.  As such, the post is corroborative of her participation in the events of January 6 and is evidence of her knowledge and intent for the crimes charged. It does not infringe Rule 403.

7.      **Exhibit 404**.  Exhibit 404 identifies a Facebook post and associated comments made by the defendant and others on January 11, 2021, concerning "'conspiracy' chatter" and other references which plainly concern January 6, 2021, which include a comment regarding a "flash mob" that the defendant states had the "worst 'timing' ever."  Again, the statements are relevant to show the defendant's knowledge and intent on January 6, and the defendant does not adequately explain how they would be unfairly prejudicial.

The defendant's claim that the exhibit includes inadmissible hearsay is without merit.  The statements made by individuals that are not the defendant are not being offered in this exhibit for their truth.  Fed. R. Evid. 801(c)(2).  Instead, they are being offered to show the effect on the defendant, whose responding comments are her statements and, therefore, also defined as not hearsay under the Rule.  Fed. R. Evid. 801(d)(2).

8.      **Exhibit 405.**  Exhibit 405 identifies a Facebook post that the defendant made on January 9, 2021.  The defendant objects again on relevance grounds.  However, the statement is relevant to demonstrate the defendant's knowledge and intent on January 6.  In particular, the post demonstrates the defendant's antagonism against the election of President Biden, which is relevant to the defendant's intent and knowledge while she was at the Capitol on January 6.  The defendant again presents no explanation for her objection under Rule 403.

9. **Exhibit 406**. Exhibit 406 identifies a Facebook post that the defendant made on December 8, 2020. The defendant, again, objects to Exhibit 406 based on relevance and the criteria under Rule 403. The government submits that the post is also relevant to establish the defendant's knowledge and intent on January 6, 2021, even if it is less direct than others. The defendant also has again not identified any explanation or support for an objection under Rule 403.

10. **Exhibit 407**. Exhibit 407 identifies a posted Facebook communication between the defendant and another person in April and May of 2021, in which they discuss concerns about being interviewed and arrested by law enforcement. The defendant objects to Exhibit 407 based on relevance, Rule 403, and as hearsay. Evidence that defendant was concerned about attention from law enforcement and being arrested is relevant to show that she knowingly committed crimes on January 6, 2021. The evidence is not hearsay under Rule 801, because the statements by the other individual are not offered for their truth and the defendant's statements are not hearsay. Fed. R. Evid. 801(c)(2), (d)(2). The defendant's objection also does not identify a risk of unfair prejudice, undue delay or that it would somehow mislead the jury.

11. **Exhibit 408**. Exhibit 408 identifies a Facebook message from January 13, 2021, in which the defendant states that she "figured the FBI will be on my doorstep one of the[se] days." The defendant repeats her objections based on relevance, unfair prejudice, and hearsay. The objections are, again, without merit, because the defendant's belief that law enforcement would be planning to arrest her is relevant to establish that she knowingly committed crimes on January 6. The statements are not hearsay under Rule 801, because they are not offered for the truth of the matter asserted and they are statements of the defendant. The defendant has also, and once again, not identified any support for an objection under Rule 403.

12. **Exhibit 410.** Exhibit 410 identifies a Facebook message sent by the defendant on January 9, 2021. Among other statements, it includes assertions that the 2020 election was

6

"rigged" and that tax dollars were "sent to Italy to hack [D]ominion and change Trump votes to Biden," as well as assertions that former Vice President Pence planned to "take over as president." The statements are, thus, relevant to establish the defendant's knowledge and intent on January 6—they tend to show that the defendant, after January 6, believed that the 2020 presidential election was illegitimate.

The defendant again does not offer any substantive support for an objection under Rule 403.

13. **Exhibit 411**.  Exhibit 411 identifies Facebook messages sent by the defendant and another individual on January 17, 2021.  In these messages, the defendant clearly states her belief that the 2020 election was stolen, which is relevant to her knowledge and intent when she participated in the attack on the Capitol on January 6, 2021.  The statements do not meet the definition of hearsay under Rule 801 for the same reasons provided above, and the defendant has made no showing that the exhibit would be unfairly prejudicial, cause undue delay or mislead the jury under Rule 403.

14. **Exhibit 412**.  Exhibit 412 identifies Facebook messages from January 23, 2021, in which the defendant indicates her belief that she is about to be arrested.  The defendant repeats the same objections under Rule 401, 403 and 801.  Once again, the defendant's statements about being arrested and going to jail are relevant to establish that she knowingly committed the charged offenses on January 6, 2021.  The statements also, again, do not meet the definition of hearsay under Rule 801, and the defendant has made no showing that they would be unfairly prejudicial, cause undue delay, or mislead the jury under Rule 403.

15. **Exhibit 413**.  Exhibit 413 identifies similar posts from January 19, 2021, in which the defendant, again, addresses concerns that she is a focus of attention by law enforcement.  The

defendant's objections based on relevance, unfair prejudice, and hearsay are—again—unsupported and inapt for the same reasons described previously.

16.     **Exhibit 414**. Exhibit 414 identifies Facebook messages in which the defendant describes her experiences on January 6, 2021 on the same day. The messages include statements by the defendant who, when asked to described January 6, responds by stating, "What. The. Crap. Woohoo!!!!!!!" The defendant also stated that she "Got pepper sprayed!" and posted a picture from inside the Capitol building. The defendant also stated that she "wanted to see the senate hall but they had already chased everyone out from there and about 15 minutes later a ton of officers came pouring out from that area and slowly pushed back the crowd." She also stated that she had "tried not to get arrested, and avoided most of the main chaos, but yeah, this kind of stuff is in my blood." The defendant repeats her relevance, 403, and hearsay objections. Plainly, the defendant's statements *on* January 6 and *about* January 6 are relevant to her state of mind that day. For the same reasons described above, both her and the other individual's messages are not hearsay, and the defendant again fails to indicate how the highly probative value of these messages is somehow outweighed by a risk of unfair prejudice, undue delay, or misleading the jury.

17.     **Exhibit 415.** Exhibit 415 identifies Facebook messages exchanged between the defendant and another individual on January 7, 2021—just one day after the riot. The defendant sent an image of rioters fighting with police officers at the Capitol and circled herself in the image within the mob. She also states:

> The police were just trying to keep them from pushing through the gates. Once the police retreated things stayed peaceful. They arrested the first few guys that got through but that just encouraged the others to keep pushing. Every time a percussion grenade/flash bang was thrown at the crowd they just cheered and kept pushing. There were a lot of angry Americans there but also a lot of peaceful ones. A few of us tried to stop them from pushing through the police gates but then I got pepper spray in my eyes.

Despite the defendant's same objections, the defendant's statements and posted images (including circling herself in the mob) are directly probative of her presence, intent, and knowledge on January 6, 2021. The statements also are not hearsay under Rules 801(c)(2) and 801(d)(2), and the defendant—again—does not substantiate her argument for exclusion pursuant to Rule 403.

18.     **Exhibit 418**. Exhibit 418 identifies additional Facebook messages from January 7, 2021 in which the defendant states, "Yup! I made it all the way up too!" and posts a picture of herself holding a "Trump 2020" sign on the steps of the Capitol building inside the restricted area and wearing the items of clothing that were seized from her residence pursuant to a search warrant. The defendant's statements and posted image are relevant to establish that she knowingly entered and remained in the Capitol building and grounds on January 6 and that she knowingly committed each of the charged offenses, as well as her intent to disrupt Congress. The defendant's repeated hearsay and 403 objections are not appropriate for the same reasons previously described.

19.     **Exhibit 419**. Exhibit 419 identifies additional Facebook messages by the defendant on January 7, 2021. The defendant's statements also demonstrate that she was present and knowingly participated in the events on January 6. It is, therefore, relevant to establish the defendant's knowledge and intent, and her repeated hearsay and 403 objections are not appropriate for the same reasons previously described.

20.     **Exhibit 420**. Exhibit 420 identifies a post from January 10, 2021, in which the defendant shared that the former president would address the nation. The post, as with other Facebook post exhibits described above, is relevant to establish her motivations and intentions on January 6, 2021. The defendant's repeated hearsay and 403 objections are not appropriate for the same reasons previously described.

21. **Exhibit 421**. Exhibit 421 identifies multiple posted statements by the defendant from January 7, 2021 that specifically discuss the events on January 6, 2021. As such, they are relevant to establish the fact of her participation in the events of January 6, her knowledge, and her state of mind. The defendant's repeated hearsay and 403 objections are not appropriate for the same reasons previously described.

22. **700-series Exhibits**. The government's 700-series exhibits are videos and images depicting events in and around the Capitol on January 6. These include media from journalists and rioters, including persons who may have been charged in separate criminal cases for their conduct. The defendant objects to the authentication of those "open-source" videos and images in these exhibits. The objection is incorrect.

At trial, the government will authenticate these videos and images in multiple ways. *First*, Rule 901(b)(1) provides that any witness with knowledge of the events depicted in a photograph or video can authenticate the evidence. *See* Fed. R. Evid. 901(b)(1) ("Testimony of a Witness with Knowledge"). That includes any person who was present for the events depicted and has a recollection sufficient for them to recognize the scene depicted and testify that the exhibit appears to fairly and accurately show the events that took place. *See, e.g., Am. Wrecking Corp. v. Sec-y of Lab.*, 351 F.3d 1254, 1262 (D.C. Cir. 2003); *see also, United States v. Rembert*, 863 F.2d 1023, 1026 (D.C. Cir. 1988); *citing e.g., Simms v. Dixon*, 291 A.2d 184 (D.C. Cir. 1972).

Even a person who was not present for a specific event can circumstantially establish the authenticity of a photograph or video depicting an event. Indeed, the bar for establishing authenticity sufficient to admit evidence to the jury under Rule 901 is very low. It requires only a *prima facie* showing that the evidence is what the government purports it to be—namely, photographs and videos of the Capitol riot in progress. For that

reason, even a witness who was not present during the events depicted can authenticate an exhibit, if they can: (1) identify the location(s) depicted in the photograph or video; and (2) establish that the video is generally consistent with their knowledge of the events that occurred at that location during the Capitol riot. *See, e.g., Rembert*, 863 F.2d at 1028 ("Even if direct testimony as to foundation matters is absent … the contents of a photograph itself, together with such other circumstantial or indirect evidence as bears upon the issue, may serve to explain and authenticate a photograph sufficiently to justify its admission into evidence.") (*quoting United Stearns*, 550 F.2d at 1171); *Holmquist,* 36 F.3d at 169 ("A photograph's contents, buttressed by indirect or circumstantial evidence, can form a sufficient basis for authentication even without the testimony of the photographer or some other person who was present at the time it was taken*."); Cf., United States v. Safavian*, 435 F. Supp.2d 36 (D.D.C. 2006) (authenticating emails based on "distinctive characteristics" *and citing* Fed. R. Evid. 901(b)(4)); *Klayman v. Judicial Watch*, 299 F. Supp.3d 141 (D.D.C. 2018) (admitting emails and advertisements by comparing later versions with admitted versions).

Second, authenticated videos or photographs can also authenticate other, substantially similar videos or photographs of the same scene. *See* Fed. R. Evid. 901(b)(3); *see, e.g., Valve Corp. v. Ironburg Inventions Ltd*., 8 F.4th at 1371; *Stearns*, 550 F.2d at 1171-72 (where circumstantial evidence established one photographs authenticity, it "authenticates the other four pictures as to time"); *Diaz v. County of Ventura*, 512 F. Supp.3d 1030, 1035 (C.D. Cal. 2021) ("Here, the videos can be authenticated through other evidence on the record – namely, other video and photographic evidence of the incident that Green provides."); *United States v. Safavian*, 435 F. Supp.2d at 40 ("e-mails that are not clearly identifiable on their own can be authenticated under Rule 903(b)(3)," by the

jury's comparison with other "emails that already have been independently authenticated"); *see also, United States v. Rodean*, 1:21-cr-57-TNM, Dkt. 50 (D.D.C. Apr. 20, 2022). In *Rodean*, the court compared screenshots of video from a known source with screenshots of video footage taken by an unspecified rioter showing the Senate Wing doors from the outside, looking in. *Id*. at 2. The court noted similar objects depicted in both sets of screenshots: doors of a building flanked by windows, a crowd of rioters near the windows, and a wooden bean sticking through a shattered window. *Id*. The court found these similarities sufficient and granted the government's pretrial motion to find the video taken by the specified rioter to be authentic. *Id*. at 6.

Thus, the government anticipates that it will present testimony from law enforcement witnesses, including officers from the United States Capitol Police and Metropolitan Police Departments, as well as the United States Secret Service, who were present at the Capitol and on the Capitol grounds on January 6 and can testify that the images and videos fairly and accurately depicts the circumstances of that day, consistent with the requirements of Rule 901(a) and (b)(1). Additionally, the "open-source" videos can be compared with each other, as well as images from other government sources, such as closed-circuit television (CCTV) video and body-worn camera (BWC) footage from January 6, 2021, as well as the defendant's own posted images from that day, like the image in which she circled herself in the mob. *See* Exhibit 415 (discussed in paragraph 17, *supra*). Additionally, the videos and images all include "distinctive characteristics and the like." See Fed. R. Evid. 901(b)(4). The most obvious of which is that they depict the January 6 riot at the Capitol: the seat of our federal legislature. All of the 700 series exhibits also prominently feature the defendant, who is distinctively dressed and participating in the mob.

In each and all of these forms, the government submits that the 700-series exhibits will be authenticated at trial, and the defendant's objection is inapt.[4]

### Response to Defendant's Supplement to Defendant's Motion *in Limine*

Defendant's Supplement to her Motion *in Limine* refers to the report of an interview in which an interviewee described the defendant as "increasingly alt-right." ECF No. 67 at 2. The government submits that it does not intend to call that individual as a witness at trial or, as indicated in its initial response to the motion *in limine*, to introduce evidence including that language in its case in chief.

### Response to the Court's May 18, 2023 Minute Order

Prior to the filing of the Joint Pretrial Statement, counsel for the government and defendant conferred regarding the requirements set Court's Standing Order, ECF 46, the Court's April 14, 2023 Minute Order, and the previously entered Amended Pretrial Scheduling Order, ECF 37. At that time, the government was focused on the Amended Pretrial Scheduling Order, which required the parties to exchange witness and exhibit lists on May 5, 2023,[5] and did not include the Standing Order's requirement that the Joint Pretrial Statement include the defendant's objections to the government's exhibits. Shortly after the filing of the Joint Pretrial Statement, also on May 5, 2023, the government provided defense counsel with copies of its proposed exhibits, all of which had previously been provided in discovery, and its witness list. The government apologizes for its oversight.

---

[4] The government does not anticipate seeking to admit Exhibit 703, which is a long video originally from YouTube with a large file size—the government intends to only seek to admit Exhibit 703A, which is a screenshot from this video that depicts the defendant.

[5] The government has not received an exhibit list or witness list from defense counsel. Defense counsel has indicated that it is unlikely there will be any defense exhibits.

13

Respectfully submitted,

MATTHEW M. GRAVES
United States Attorney

By:    */s/Christopher Brunwin*
CHRISTOPHER BRUNWIN
California Bar No. 158939
Assistant United States Attorney, Detailee
United States Attorney's Office
Central District of California
312 N. Spring Street
Los Angeles, California 90012
(213) 894-4242
christopher.brunwin@usdoj.gov

*/s/ Nathaniel K. Whitesel*
NATHANIEL K. WHITESEL
Assistant United States Attorney
D.C. Bar No. 1601102
United States Attorney's Office
601 D Street, N.W.
Washington, D.C. 20530
(202) 252-7759
nathaniel.whitesel@usdoj.gov