**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| UNITED STATES OF AMERICA <br><br> v. <br><br> JOLENE EICHER, <br><br> Defendant. | Criminal Action No. 22-38 (BAH) <br><br> Judge Beryl A. Howell |

**<u>MEMORANDUM OPINION</u>**

Defendant Jolene Eicher is facing trial in June 2023 on a superseding information charging her with four misdemeanors stemming from her alleged conduct at the U.S. Capitol on January 6, 2021.  After defendant filed a Notice of Public Authority Defense ("Def.'s Notice"), ECF No. 48, pursuant to FED. R. CRIM. P. 12.3(a), alerting the government that she intends to argue that any unlawful conduct she may have committed on January 6, 2021 was authorized by then-President Donald J. Trump, the government moved to preclude defendant from "presenting argument or evidence about a public authority defense at trial."  Gov't's Resp. Opp'n Def.'s Notice & Mot. *in Limine* to Preclude Arg. or Evid. About Public Authority ("Gov't's Mot.") at 1, ECF No. 51.  For the reasons discussed below, the government's motion is granted.

I.      **DISCUSSION**

Defendant has provided notice that she intends to invoke the public authority defense, urging that "[t]he 45th President has everything to do with what Ms. Eicher believed and what transpired in and around the Capitol on January 6, 2021."  Def.'s Reply to Gov't's Resp. Opp'n Def.'s Notice & Mot. *in Limine* to Preclude Arg. or Evid. About Public Authority ("Def.'s Opp'n") at 3, ECF No. 57.  Consistent with her notice, defendant has proposed two jury instructions, titled "Mistake of Law" and "Mistake of Fact," both of which the government opposes.  *See* Joint Pretrial

Statement, Ex. 2, Joint Proposed Jury Instructions at 12–13, ECF No. 59-2.  Defendant's "Mistake of Law" proposal would instruct the jury that (1) "Ms. Eicher has raised a defense that she was on the Capitol grounds on January 6th because she was told that she and many others could and should go there by the then President Donald Trump," and (2) a "bona fide belief that someone is authorized to be in a location, even one that is restricted, is a defense to each of the charges at issue here."  *Id.*  Defendant's so-called "Mistake of Fact" proposal, offered in the alternative, would instruct jurors only as to the second statement.  *Id.*  To prove the affirmative defense animating both proposed instructions, which defendant interchangeably refers to as the "public authority" and "entrapment by estoppel" defenses, *see* Def.'s Opp'n at 3, defendant will seek to introduce evidence at trial of the former President's statements questioning the legitimacy of the 2020 presidential election, including his speech to gathered supporters at the Ellipse on January 6, 2021, shortly before rioters descended upon the U.S. Capitol, and "his many statements, speeches, and online posts between November 3, 2020 and that date."  Def.'s Notice at 2.

The nature of the public authority defense (and the closely related entrapment-by-estoppel defense) are described briefly first before reaching the merits of the government's motion and the evidentiary consequences of this ruling for trial.[1]

---

[1]     FED. R. CRIM P. 12.3 was added directly to the Federal Rules of Criminal Procedure by Congress, which "short-circuited the rule-making process," and thus "no Advisory Committee Note ('Note') accompanies the rule," leaving courts to look to a proposed Note submitted in connection with an earlier proposal by the Criminal Rules Advisory Committee.  *United States v. Pitt*, 193 F.3d 751, 757 (3d Cir. 1999), *abrogated on other grounds by Honeycutt v. United States*, 581 U.S. 443 (2017) .  This rule is titled simply "Notice of Public-Authority Defense," though the rule applies to *both* the public authority defense and its sibling defense, entrapment by estoppel.  *See* 1A CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 212 n.7 (5th ed. 2023) (noting that an Advisory Committee Note to an earlier proposed version of the rule specified that the rule "covers all defenses based upon a claim that a defendant actually exercised the public authority of a law enforcement or federal intelligence agency at the time of an alleged offense and all defenses based upon a claimed belief that the defendant was exercising such authority").

### A.      Government Authorization Defenses Generally

The public authority and entrapment-by-estoppel defenses are complete defenses to criminal liability and, as such, invocation requires defendants to meet "a high bar." *United States v. Chrestman*, 525 F. Supp. 3d 14, 31 (D.D.C. 2021).  Ultimately, defendants must prove these affirmative defenses by a preponderance of the evidence, but to first merit a jury instruction regarding these theories at all, defendants must offer "sufficient evidence" to support their invocation.  *United States v. Jumah*, 493 F.3d 868, 878 (7th Cir. 2007).  Accordingly, "[a] defendant 'will not be allowed to assert the defense, or to demand that the jury be instructed on it, unless he meets certain evidentiary prerequisites.'"  *United States v. Navarro*, Case No. 22-cr-200 (APM), 2023 WL 371968, at *15 (D.D.C. Jan. 19, 2023) (quoting *United States v. Alvarado*, 808 F.3d 474, 484 (11th Cir. 2015)).  True, as Judge Bates recently explained, the particular contours of those evidentiary prerequisites are mired in confusion in this Circuit, where "the state of the public authority defense (and its close cousin, entrapment by estoppel) in the D.C. Circuit remains somewhat unsettled," because "the D.C. Circuit has not articulated in a binding opinion either the elements of the defenses or the procedure by which a court should consider them."  *United States v. Sheppard*, Case No. 21-cr-203 (JDB), 2022 WL 17978837, at *7–8 (D.D.C. Dec. 28, 2022).  Further, Judges on this Court have disagreed as to whether these related defenses are distinct or really "one and the same."  *United States v. Bingert*, Case No. 21-cr-91 (RCL), 2023 WL 3203092, *5 n.2 (D.D.C. May 2, 2023) (citing *United States v. Carpenter*, Case No. 21-cr-305 (JEB), 2023 WL 1860978, at *2 (D.D.C. Feb. 9, 2023) and *Navarro*, 2023 WL 371968, at *15).  The D.C. Circuit has rarely referred to either type of affirmative defense by name, instead alluding more generally to the concept of an "authorization defense" whereby "the defense of reliance on an official misstatement of law" is valid, albeit "circumscribed."  *United States v. North*, 910 F.2d

843, 878–881 & 881 n.10 (D.C. Cir.), *opinion withdrawn and superseded in part on reh'g*, 920 F.2d 940 (D.C. Cir. 1990)).  Still, this Court can cut through the fog to discern shared, essential requirements of the public authority and entrapment-by-estoppel defenses.

To begin, these affirmative defenses apply only in the extraordinary case "when an individual criminally prosecuted for an offense reasonably relied on statements made by a government official charged with 'interpreting, administering, or enforcing the law defining the offense' and those statements actively misled the individual to believe that his or her conduct was legal." *Chrestman*, 525 F. Supp. 3d at 29–30 (quoting *United States v. Cox*, 906 F.3d 1170, 1191 (10th Cir. 2018)).  As complete defenses to criminal liability, these affirmative defenses are "narrowly tailored," *id.* at 30, and "rarely available," *United States v. Howell*, 37 F.3d 1197, 1204 (7th Cir. 1994); *see also Alvarado*, 808 F.3d at 484.  Both defenses are rooted in "fundamental fairness concerns of the Due Process Clause," *United States v. Spires*, 79 F.3d 464, 466 (5th Cir. 1996), and predicated on the reasoning that an individual's "conviction for actions taken in reasonable reliance on certain statements by government officials 'would be to sanction an indefensible sort of entrapment by the State—convicting a citizen for exercising a privilege which the State had clearly told him was available to him,'" *Sheppard*, 2022 WL 17978837, at *7 (quoting *Cox v. Louisiana*, 379 U.S. 559, 571 (1965)).

To the extent that courts have recognized a difference between the two defenses, they have identified two closely-related distinctions.  First, when a public authority defense is invoked, "the defendant engages in conduct at the request of a government official that the defendant knows to be otherwise illegal, while in the case of entrapment by estoppel, because of the statements of an official, the defendant believes that his conduct constitutes no offense." *Jumah*, 493 F.3d at 874 n.4.  For this reason, the public authority defense often arises when defendants claim to have been

working as government informants conducting drug deals or other clearly illicit conduct at the behest of their official handlers, *see, e.g., id.*

"[G]iven the practical difficulty in the mine-run of cases to draw a meaningful distinction between the culpability of a defendant who knows the conduct he has been authorized to commit is illegal (public authority defense) and a defendant who has been assured that the conduct is legal (entrapment-by-estoppel defense), it is the public authority defense's requirement of actual authority that creates the most significant demarcation between the two defenses." *Alvarado*, 808 F.3d at 485. This gives rise to the second distinction: although the public authority defense "requires reasonable reliance upon the *actual* authority of a government official to engage him in a covert activity," *United States v. Fulcher*, 250 F.3d 244, 254 (4th Cir. 2001) (emphasis added), circuit courts diverge on the question of whether the official's *apparent* authority suffices for an entrapment-by-estoppel defense. *Compare Cox*, 906 F.3d at 1191 (requiring "that the government agent was responsible for interpreting, administering, or enforcing the law defining the offense" and "that the defendant's reliance was reasonable in light of the identity of the agent, the point of law misrepresented, and the substance of the misrepresentation" (internal quotations omitted)) *with United States v. Lynch*, 903 F.3d 1061, 1076 (9th Cir. 2018) (requiring the defendant show that "an authorized government official, empowered to render the claimed erroneous advice . . . who has been made aware of all the relevant historical facts" authorized the conduct).[2]

---

[2] Notably, this circuit split was not resolved in FED. R. CRIM. P. 12.3, which "itself is entirely procedural in nature," *Pitt*, 193 F.3d at 757, and "[t]herefore, the law in jurisdictions where actual authority was required [for the public authority defense] was not altered," *id.*; *see also United States v. Sariles*, 645 F.3d 315, 318-19 (5th Cir. 2011) (rejecting defense argument that Rule 12.3 "imports apparent authority into the public authority defense because it refers to a defendant's 'believed exercise' of authority," because it is "a rule of procedure, rather than a substantive provision," and holding that the common law requirement "that actual authority is a necessary element of the public authority defense" is not altered); *United States v. Burrows*, 36 F.3d 875, 881 (9th Cir. 1994) ("Rule 12.3 sets forth a notice requirement but does not limit or expand the public authority defense.").

Appellate courts outside the D.C. Circuit have articulated variations of the elements that must be satisfied for either defense to be invoked, as the government's motion assiduously surveys, *see* Gov't's Mot. at 2–3, 7–8, but even without adopting any particular test in the uncertain terrain of the D.C. Circuit, certain requirements are undisputed.[3]   First, defendant must show "that a government official affirmatively communicated to the defendant the official's approval of the conduct at issue," *Alvarado*, 808 F.3d at 485; *see also Sheppard*, 2022 WL 17978837 at *9 (describing as "undisputed" that a defendant must "rel[y] on a 'conclusion or statement of law' by the relevant official" (quoting *North*, 910 F.2d at 880)); *Chrestman,* 525 F. Supp. 3d at 31 (requiring that a government agent "actively misled [defendant] about the state of the law defining the offense").   This official statement of law need not be explicit.   As *Sheppard* explains, "the public authority and entrapment-by-estoppel defenses are available only when the official's statements or conduct state or clearly imply that the defendant's actions are lawful."   2022 WL 17978837 at *9.[4]

---

[3]   Generally, circuit courts have explained that to merit a jury instruction on the public authority defense, a criminal defendant must produce evidence that "(1) a government official authorized him to take what would otherwise be an illegal action; (2) that this official had the actual authority to permit the action; and (3) that the defendant reasonably relied on the official's authorization."  *Alvarado*, 808 F.3d at 489.  *Accord Sariles*, 645 F.3d at 319 (holding "that the public authority defense requires the defendant reasonably to rely on the actual, not apparent, authority of the government official or law enforcement officer to engage the defendant in covert activity"); *Fulcher*, 250 F.3d at 254 (concluding that "the defense of public authority requires reasonable reliance upon the actual authority of a government official to engage him in a covert activity"); *Burrows*, 36 F.3d at 881 (holding that "a defendant makes out a defense of public authority only when he has shown that his reliance on governmental authority was reasonable as well as sincere").  In contrast, to prove an entrapment-by-estoppel defense, a defendant must show "(1) that a government agent actively misled him about the state of the law defining the offense; (2) that the government agent was responsible for interpreting, administering, or enforcing the law defining the offense; (3) that the defendant actually relied on the agent's misleading pronouncement in committing the offense; and (4) that the defendant's reliance was reasonable in light of the identity of the agent, the point of law misrepresented, and the substance of the misrepresentation."  *Chrestman*, 525 F. Supp. 3d at 31 (quoting *Cox*, 906 F.3d at 1191).  *Accord United States v. Baker*, 438 F.3d 749, 753 (7th Cir. 2006) ("The entrapment by estoppel defense applies when, acting with actual or apparent authority, a government official affirmatively assures the defendant that certain conduct is legal and the defendant reasonably believes that official." (internal quotations omitted)).

[4]   Although the D.C. Circuit did not say so explicitly, this requirement of a clear statement or implication of authorization by the government official is necessary to avoid what that Court has called the "'Becket' defense," referring to the murder of the Archbishop of Canterbury Thomas Becket, supposedly undertaken by knights in

Second, these defenses are not available "where a government actor's statements constitute 'a waiver of law' beyond his or her lawful authority." *Chrestman*, 525 F. Supp. 3d at 32 (quoting *Cox*, 379 U.S. at 569). As this Court previously explained, in the trilogy of Supreme Court cases that gave rise to these defenses—*Raley v. Ohio*, 360 U.S. 423 (1959), *Cox*, 379 U.S. 559, and *United States v. Pa. Indus. Chem. Corp.*, 411 U.S. 655 (1973)—the "government actors' statements were made in the specific exercise of the powers lawfully entrusted to them," and none "implicated the potential 'waiver of law.'" *Chrestman*, 525 F. Supp. 3d at 32 (quoting *Cox*, 379 U.S. at 569). In *Cox*, for example, the Supreme Court reversed the conviction of the leader of a civil rights protest under a Louisiana anti-picketing statute, which prohibited demonstrations "near" a courthouse without defining "near," holding that the conviction violated the Due Process Clause because the town's police chief "in effect told [] demonstrators that they could meet where they did, 101 feet from the courthouse steps." 379 U.S. at 571. In so ruling, the Court emphasized that the police chief's authorization of the demonstration did not "constitute a waiver of law which is beyond the power of the police," because "telling demonstrators how far from the courthouse steps is 'near' the courthouse for purposes of a permissible peaceful demonstration is a far cry from allowing one to commit, for example, murder, or robbery." *Id.* at 569. With respect to the latter examples, a unilateral waiver of the criminal law would go beyond "a government official's clarifying, if inaccurate, representations" in the face of "defendant's confusion about the state of the law," and instead "unilaterally abrogate criminal laws duly enacted" by legislatures. *Chrestman*, 525 F. Supp. 3d at 32.[5]

---

response to King Henry II's indirect request, attributed as "Who will free me from this turbulent priest?" *North*, 910 F.2d at 883 n.12; *see also United States v. Ehrlichman*, 546 F.2d 910, 926 (D.C. Cir. 1976). Such a defense would impermissibly shield from prosecution criminal conduct undertaken at the mere insinuation of a king—or in this case, a president.

[5] To the extent that the public authority and entrapment-by-estoppel defenses diverge, courts have described the former as "requir[ing] that the government official who sanctions the illegal activity have actual authority to

The D.C. Circuit's most recent pronouncement on what it calls the "authorization defense" in *United States v. North* comports with these distillations of the relevant law.  In *North*, where Lieutenant Colonel Oliver North was convicted on three counts related to his role in the Iran/Contra Affair, the D.C. Circuit affirmed the trial court's rejection of North's proposal to instruct the jury that if he were found to have "acted in good faith on a superior's apparent authorization of his action, and that his reliance was reasonable based on the facts as he perceived them, that is a complete defense."  910 F.2d at 879.  The D.C. Circuit, describing its prior precedent as "incoherent" on the nature of this defense, *id.* at 885 n.15, characterized the proposed instruction as "conjur[ing] up the notion of a 'Nuremberg' defense, a notion from which our criminal justice system, one based on individual accountability and responsibility, has historically recoiled," for its implication that "following orders, without more, [would] transform an illegal act into a legal one."  *Id.* at 881.  Though the D.C. Circuit declined to elaborate on the required showing, it criticized North for "not even claim[ing] that he relied on *any* 'conclusion or statement of *law*,' let alone one 'issued by an official charged with interpretation, administration, and/or enforcement responsibilities in the relevant legal field.'"  *Id.* at 880 (emphasis in original) (quoting *United States v. Barker*, 546 F.2d 940, 955 (D.C. Cir. 1976) (Merhige, J. opinion)).

B.     **Defendant's Invocation of the Public Authority Defense**

Defendant's attempt to stretch the public authority (and/or entrapment-by-estoppel) defense to excuse her alleged offense conduct at the Capitol fails because defendant cannot show that former President Trump's statements prior to her alleged conduct on the afternoon of January 6, 2021 meet either of the requirements to invoke these defenses.  First, as multiple Judges on this

---

approve the defendant's criminal activity."  *Navarro*, 2023 WL 371968, at *15 (quoting *Alvarado*, 808 F.3d at 485); *see also supra* at n.3.  *Chrestman*'s holding that a complete defense cannot be rooted in a government official's *ultra vires* waiver of criminal statutes applies with equal force to both defenses.

Court have held, the former President's January 6, 2021 speech at the Ellipse "neither stated nor implied that entering the restricted area of the Capitol grounds and the Capitol building . . . was lawful." *Sheppard*, 2022 WL 17978837, at *9. *See also United States v. Grider,* Case No. 21-cr-22 (CKK), 2022 WL 3030974, *3 (D.D.C. Aug. 1, 2022); *Carpenter*, 2023 WL 1860978, at *2–3. Defendant argues that the former President "told the many assembled citizens to go to the Capitol," Def.'s Opp'n at 4, but offers no evidence that he "either expressly stated or strongly implied that to do so was <u>lawful</u>." *Carpenter*, 2023 WL 1860978, at *2 (emphasis in original). Instead, former President Trump's speech "d[id] not address legality at all." *Sheppard*, 2022 WL 17978837, at *9. Indeed, treating this speech as the basis of a complete defense to defendant's charges "would be an instance of allowing 'following orders, without more, [to] transform an illegal act into a legal one'—something the D.C. Circuit has unequivocally declined to do." *Id.* (quoting *North*, 910 F.2d at 881).

Defendant points to other statements made by the former president, besides his January 6th speech at the Ellipse, that affirmatively approved the rioters' conduct, but the statements cited in support were all made *after* January 6, 2021. Defendant first argues that the former President "told them"—presumably referring to the "assembled citizens" on January 6, 2021—that the supposedly "massive fraud" in the 2020 presidential election "'allow[ed] for the termination of all rules, regulations and articles, even those found in the Constitution.'" Def.'s Opp'n at 4 (purporting to quote Resolution Impeaching Donald John Trump, President of the United States, for High Crimes and Misdemeanors, H.R. Res. 24, 117th Cong. (2021)). Defendant mischaracterizes the origin of this statement, however, because contrary to defendant's misattribution of the quotation's source to the January 2021 Article of Impeachment, the statement was published for the first time by former President Trump on his Truth Social account in December 2022—*nearly two years after*

the conduct for which defendant is charged.  Defendant apparently intended to cite the final report

issued by the U.S. House of Representatives Select Committee to Investigate the January 6th Attack

on the U.S. Capitol in December 2022, *see* SELECT COMMITTEE TO INVESTIGATE THE JANUARY

6TH ATTACK ON THE U.S. CAPITOL, FINAL REPORT, H.R. REP. NO. 117-663, at 113 & n.656 (Dec.

22, 2022).[6]  Although defendant points to this statement by former President Trump as "precisely

the sort of statement about what is legal" that satisfies the public authority defense, Def.'s Opp'n

at 5, an individual's conduct cannot be retroactively authorized by a government official.  The

authorization defenses are only available "for actions taken in reasonable reliance on certain

statements by government officials."  *Sheppard*, 2022 WL 17978837, at *7; *accord United States

v. Lam Kwong-Wah,* 924 F.2d 298, 310 n.9 (D.C. Cir. 1991) (noting that "it seems clear that to

have any hope of success [on a public authority defense] a defendant must show at least that he

'honestly and reasonably' believed that his actions were being committed pursuant to lawful

authority . . . and the belief must be 'objectively reasonable'" (quoting *Barker*, 546 F.2d at 949

(Wilkey, J. opinion)).

Defendant's next argument, that former President Trump "pledged that he would pardon"

members of the mob, Def.'s Opp'n at 5, is similarly misleading. All public indications of the

former President's inclination to pardon defendants charged for their conduct on January 6, 2021,

arose *after* that date.  *See* SELECT COMMITTEE TO INVESTIGATE THE JANUARY 6TH ATTACK ON THE

U.S. CAPITOL, FINAL REPORT, H.R. REP. NO. 117-663, at 113 & n.657 (noting that the former

President "considered pardoning those involved in the attack and has since expressed a desire to

---

[6]        Defendant might instead cite the line during former President Trump's speech at the Ellipse on January 6,
2021, when he stated that "[w]hen you catch somebody in a fraud, you're allowed to go by very different rules," but
this argument, too, would fail, because that comment was in the context of urging then-Vice President Michael
Pence to refuse to count lawful electoral votes, elaborating that he "hope[d] Mike has the courage to do what he has
to do."  SELECT COMMITTEE TO INVESTIGATE THE JANUARY 6TH ATTACK ON THE U.S. CAPITOL, FINAL REPORT,
H.R. REP. NO. 117-663, at 113.

pardon them," citing a September 2022-dated news article).  Defendant could not have reasoned her actions on January 6, 2021 were lawful in reliance on this later promise of a pardon.

Defendant's invocation of the public authority and entrapment-by-estoppel defenses fails for a second, related reason.  Defendant contends that, because the former President "had the authority to later excuse" criminal conduct at the U.S. Capitol by granting pardons, "he had the authority to allow a person to go there to begin [with]."  Def.'s Opp'n at 5.  This is a repackaging of the argument rejected by this Court in *Chrestman*—that defendant "acted under the belief President Trump had waived the entire corpus of criminal law as it applied to the mob." *Chrestman*, 525 F. Supp. 3d at 32.  As this Court has already held, "[n]o American President holds the power to sanction unlawful actions because this would make a farce of the rule of law."  *Id.* Even if former President Trump ordered the crowd to "attack the Capitol and disrupt the certification of the electoral vote count . . . he acted 'beyond [his] power' as President, and his statements would not immunize defendants charged with offenses arising from the January 6 assault on the Capitol from criminal liability."  *Id.* at 33 (quoting *Cox*, 379 U.S. at 569).  It does not follow from the President's pardon power that the President can also proactively waive the criminal law—after all, a "pardon acts on [its recipient's] supposed conviction, without purporting to address [her] innocence or guilt," and, if anything, "may imply a confession of guilt."  *United States v. Schaffer*, 240 F.3d 35, 38 (D.C. Cir. 2001).

Defendant's own reference to the prospect of presidential pardons underscores that, while defendant does not distinguish between the public authority and entrapment-by-estoppel defenses—nor need this Court, as the evidence is insufficient to support either—the nature of her argument tracks a public authority defense more closely than entrapment by estoppel.  The government alleges facts that would have put defendant on notice that she was violating the law

11

with her alleged conduct, including the allegations that she entered the U.S. Capitol Building through a broken window and later bragged online that she "[g]ot pepper sprayed," presumably by law enforcement.  Complaint at 5, 8, ECF No. 1.  Defendant does not argue that she was "at all uncertain as to whether [her] conduct ran afoul of the criminal law," but rather that former President Trump greenlit the actions of January 6th defendants *despite* and *contrary to* the law.  *Chrestman*, 525 F. Supp. 3d at 32.

Defendant's attempts to sidestep the uniform rejection of arguments resembling hers by Judges on this Court fail.  First, defendant limply urges that the holding of *Chrestman* does not apply here because of the different charges faced by the two defendants, as well as the factual differences in their alleged conduct, including that Eicher "carried no weapon," and wore only "a hair covering worn consistent with her Mennonite faith," in contrast with the helmet worn by the defendant in *Chrestman*.  Def.'s Opp'n at 2.  These factual distinctions do not provide any coherent reason why former President Trump could be endowed with the legal authority to preemptively waive all criminal laws as applied to this defendant, but not the defendant in *Chrestman*.  Second, defendant urges that *Sheppard* does not control because "the analysis of the Public Authority defense is more completely informed in light of" the former President's statements beyond his January 6, 2021, speech at the Ellipse, Def.'s Opp'n at 5, but, as already discussed, those statements all post-dated the conduct by defendant giving rise to the present charges and are therefore irrelevant.

Consequently, defendant has not demonstrated "sufficient evidence from which a reasonable jury could find for the defendant" on her theory of public authority in order to present this defense at trial.  *Sheppard*, 2022 WL 17978837, at *8 (quoting *United States v. Nwoye*, 663 F.3d 460, 462 (D.C. Cir. 2011)).  Even if, as defendant claims, the ultimate resolution of the

applicability of the defense is a question of fact for the jury, *see* Def.'s Opp'n at 4, "[t]o get to that point, the defense must offer some evidence showing its applicability at all." *Sheppard*, 2022 WL 17978837, at *8 n.5 (citing *North*, 910 F.2d at 880). This, defendant failed to do.

Defendant claims that such a ruling effectively concludes that "the 45th President has nothing to do with what happened on January 6 or what Ms. Eicher believed that person said," Def.'s Opp'n at 3, but this is incorrect. To understand why requires returning to the nature of the entrapment-by-estoppel and public authority theories as affirmative defenses, which "eliminate criminal liability *even though* all of the elements of a crime are met." *United States v. Williams*, 836 F.3d 1, 13 (D.C. Cir. 2016) (emphasis in original). In *Cox*, for example, the protestor satisfied all the elements of the Louisiana anti-picketing statute—but he was not criminally liable because his actions were deemed excused as a result of the sheriff's permission. *Cox*, 379 U.S. at 571. The burden to demonstrate this affirmative defense lies with defendants, and if defendants fail to support such an excuse with sufficient evidence, juries will not be instructed to consider the claimed excuse at all. By contrast, an "argument that a required element of a crime is missing is sometimes colloquially deemed a 'defense,'" but "it is more correctly viewed as an argument that the government has failed to prove an element of the crime." *Williams*, 836 F.3d at 13 (internal quotations omitted). The government bears the burden of proving beyond a reasonable doubt that each element of the charged offenses has been met and defendants are free to present admissible evidence negating those elements.

Defendant is charged in Count One with violating a statute that requires knowledge of the law as an element of the offense, blurring these lines between an affirmative defense and a simple failure of proof. 18 U.S.C. § 1752(a)(1) presents a "rare case in which mistake of law negates the required mental state of the offense," *Jumah*, 493 F.3d at 874 n.4, because to satisfy the elements

of this count, the parties agree that the government will have to prove at trial that defendant "entered or remained in a restricted building or grounds without lawful authority to do so," and that she did so "knowingly." Joint Proposed Jury Instructions at 4; *see also* 18 U.S.C. § 1752(a)(1). Evidence related to the former President's statements urging supporters to, for example, "go to the Capitol," *see* Def.'s Opp'n at 4, may be probative as to defendant's required intent for this charge. In fact, other Judges in this District have explicitly instructed juries that, as to this count, "[a] person who enters or remains in a restricted area with a good faith belief that she is entering or remaining with lawful authority is not guilty of" violating 18 U.S.C. § 1752(a)(1). *See, e.g.*, Final Jury Instructions at 12, *United States v. Carpenter*, Case No. 21-cr-305 (JEB), ECF No. 97; Final Jury Instructions at 17, *United States v. Strand*, Case No. 21-cr-85 (CRC), ECF No. 112. As a result, evidence showing defendant believed her actions were authorized "also could constitute a failure of proof 'defense'" as to Count One. *Jumah*, 493 F.3d at 874 n. 4.

Even though defendant has failed to meet the requirements to raise an affirmative defense, she will be permitted to present evidence that she believed she had lawful authority to enter or remain in a restricted building or grounds to negate the necessary *mens rea* of Count One, and the jury will be able to assess the credibility and believability of that testimony in the fuller evidentiary context of what was occurring when defendant allegedly engaged in the charged offense conduct.[7]

---

[7] Some courts of appeals have referred to this as an "innocent intent defense," by which a defendant claims that "he lacked criminal intent," and thus permitted such evidentiary showings even after refusing to permit public authority or entrapment-by-estoppel defenses. *United States v. Xiong*, 914 F.3d 1154, 1159 (8th Cir. 2019). *See also Alvarado*, 808 F.3d at 486–87; *accord United States v. Galecki*, 932 F.3d 176, 189, 194–95 (4th Cir. 2019) (upon precluding a public authority defense, "hesitating to recognize" a broad innocent intent defense, but reviewing the lower court's exclusion of related testimony based on whether it "negate[d] the mens rea element of the Government's case"); *Sariles*, 645 F.3d at 319 n.3 (affirming rejection of public authority defense but noting distinction, without ruling since the parties did not address the issue, whether evidence of defendant's belief about authorization "might otherwise have been admissible as bearing on [defendant's] intent"); *cf. United States v. Giffen*, 473 F.3d 30, 43–44 (2d Cir. 2006) (rejecting "an attempt to rebut the government's proof of the intent element of a crime by showing that the defendant had a good-faith belief that he was acting with government authorization" where such defense appeared unmoored from the "nature of the intent element of the charged crime"). In other words, regardless of the availability of the affirmative authorization-based defenses, defendants may argue that the government has failed to prove the requisite intent element of the charged offenses.

This is the resolution the D.C. Circuit reached in *North*.  North was charged with, *inter alia*, violating a statute that the parties agreed required the government to show that "North acted with knowledge that his conduct was unlawful."  910 F.2d at 884.  Even though the district court's refusal to provide an authorization instruction was affirmed, the D.C. Circuit held that "it was error to preclude the jury from considering whatever evidence of authorization exists in the record as it bears on the jury's determination of whether North had subjective knowledge of unlawfulness" for that charge.  *Id.* at 885.  "Where, as here, the statute requires the jury to find subjective knowledge of unlawfulness . . . [e]vidence of what one's superiors say and do, even if they do not explicitly assure one that the conduct is legal, might be crucial in establishing the defendant's belief that his conduct was not unlawful"—even if that evidence does not amount to a "full-blown authorization defense."  *Id.* at 888.

Accordingly, in *Sheppard*, where the defendant was also charged with violating 18 U.S.C. § 1752(a)(1), Judge Bates precluded the defendant from raising a public authority defense based on statements by the former President, *see Sheppard*, 2022 WL 17978837 at *9, but still permitted defendant to present evidence of statements made by former President Trump, *see* Defense Exhibit List, *United States v. Sheppard*, Case No. 21-cr-203 (JDB), ECF No. 88.  Similarly, defendants who seek to present evidence of law enforcement inaction during the January 6th riot have been permitted to do so, provided they actually perceived such inaction, because this evidence may be probative of their state of mind.  *See, e.g.,* Mem. & Order, *United States v. Bender*, Case No. 21-cr-508 (BAH), ECF No. 76; *United States v. Oliveras*, Case No. 21-cr-738 (BAH), 2023 WL 196525, at *2 (D.D.C. Jan. 17, 2023).

Whether presenting such evidence would be prudent for defendant is another question.  Defendant's attempt to raise a public authority defense here may be a risky proposition.

15

Defendant's reference to the former President's statements at the Ellipse on January 6, 2021, which statements encouraged his supporters to "fight like hell" to "stop the steal," *Sheppard*, 2022 WL 17978837 at *9, and which she contends "ha[ve] everything to do with what [she] believed," Def.'s Opp'n at 3, may support an inference that her alleged offense conduct was intended to halt the count of the Electoral College votes and the certification of the 2020 presidential election, though she has not been charged with violating 18 U.S.C. § 1512(c), a felony charge requiring that defendant "corruptly . . . obstruct[ed] . . . or imped[ed] any official proceeding, or attempt[ed] to do so." Evidence that defendant sought to justify her actions by reference to the former President's statements would be admissible *against her* at trial to prove what defendant intended by her conduct on January 6, pursuant to FED. R. CRIM. P. 12.3(e), unless defendant withdraws her Notice of Public Authority, *id*. That matters where, as here, defendant's attempted defense is best understood as a public authority defense because she "engage[d] in conduct that the defendant [knew] to be otherwise illegal." *United States v. Stallworth*, 656 F.3d 721, 727 (7th Cir. 2011).

Since the public authority and entrapment-by-estoppel defenses are not available to defendant, defendant's proposed "Mistake of Law" and alternative "Mistake of Fact" instructions will not be provided to the jury. *See* Joint Proposed Instructions at 12–13. Both proposed instructions seek to instruct the jury that a "bona fide belief" that defendant was authorized to be in a location, even if it was restricted, "is a defense to each of the charges at issue here," *id*. This statement fails to describe accurately the stiff requirements of the authorization defenses, *see supra* Part I.A., and in any case, is not applicable here, where those defenses are unavailable to defendant.

Defendant's proposed instructions mischaracterize the concepts of mistake of law and fact, but applied correctly, they provide another way of framing the outcome of this ruling. Generally, "ignorance of the law does not serve as an excuse for criminal conduct," *United States v. Holland*,

810 F.2d 1215, 1222 (D.C. Cir. 1987), but courts have carved out the authorization defenses as a "narrow exception" to this rule, *United States v. Sariles*, 645 F.3d 315, 318 n.2 (5th Cir. 2011) (quoting *Spires*, 79 F.3d at 466).  Whether described as the public authority defense, entrapment by estoppel, or mistake of law, no such instruction is permissible here.

Mistake of fact, as a term, tends to shed more heat than light, because it serves as a defense only to the extent that it negates the *mens rea* of a charged offense.  *See* WAYNE R. LAFAVE, 1 SUBSTANTIVE CRIM. L. § 5.6(a) (3d ed. 2022).  If a man mistakenly takes another's umbrella from a crowded restaurant, for example, "it is not really necessary to say that the man, if charged with larceny, has a valid defense of mistake of fact; it would be more direct and to the point to assert that the man is not guilty because he does not have the mental state (intent to steal the property of another) required for the crime of larceny."  *Id.*  So, too, here.  Defendant is entitled to present evidence and argument that she believed she was authorized to enter restricted grounds, to the extent this negates the *mens rea* requirement of Count One, which requires defendant to have "knowingly enter[ed] or remain[ed] in any restricted building or grounds without lawful authority to do so."  18 U.S.C. § 1752(a)(1).  The problem with defendant's so-called "Mistake of Fact" instruction is that it claims to apply to all four of defendant's charges, unmoored from the distinct intent elements of each, and regardless, is unnecessary where the specific instruction as to the counts will explain the elements the government must prove.

## II.    CONCLUSION

Accordingly, the government's motion to preclude defendant from invoking the public authority defense is granted and neither of defendant's proposed "Mistake of Law" and alternative "Mistake of Fact" instructions will be provided. At the same time, defendant may present evidence

and argument to demonstrate that the government failed to prove the necessary *mens rea* element for conviction.

An order consistent with this Memorandum Opinion will be entered contemporaneously.

Date: May 23, 2023

_____
BERYL A. HOWELL
U.S. District Judge