**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | **Case No. 22-CR-38 (BAH)** |
| **v.** | : | |
| | : | |
| **JOLENE EICHER,** | : | |
| | : | |
| **Defendant.** | : | |

**UNITED STATES' COMBINED OPPOSITION TO DEFENDANT'S**
**MOTION TO DISMISS INFORMATON AND RESPONSE TO THE**
**COURT'S JUNE 6, 2023 MINUTE ORDER**

The United States submits its opposition to the defendant's Motion to Dismiss Information with Alternative Motion to Exclude Contents of Cell Phone and for Other Relief ("Def.'s Mot."), ECF No. 75, and response to the Court's June 6, 2023 Minute Order.

**OPPOSITION TO DEFENDANT'S MOTION TO DISMISS OR**
**EXCLUDE THE CONTENTS OF HER CELLPHONE**

The defendant is charged for her crimes committed at the United States Capitol building and grounds on January 6, 2021.  She accuses the government of unspecified Rule 16 and *Brady* violations and asks the Court to take the extraordinary step of dismissing the charges against her because government produced files from her own cellular telephone immediately after the FBI obtained the ability to unlock it.  *See* Def.'s Mot. at 2.  Alternatively, she argues that all of the material from the cellphone should be excluded at trial.  *Id.* at 6.

The defendant has also mischaracterized the circumstances and timing of the government's production, and fails to acknowledge both the swiftness of the production and her own familiarity with the phone's contents.  Ultimately, the defendant's arguments lack merit, and the Court should deny the motion.

**BACKGROUND**

On January 31, 2022, the FBI, pursuant to a search warrant issued in the Eastern District of Virginia and executed simultaneously with the defendant's arrest, seized the defendant's cellphone. The FBI asked the defendant for the cell phone's passcode as part of the search, but she refused to provide it. At the time, and for a long time after, the FBI did not possess the technological capability to unlock this particular model of phone without the passcode and was therefore unable to search or extract any data from the phone. Recently, however, the FBI obtained the technology to unlock and search this type of cellphone.

On June 1, 2023, government counsel was alerted that the cellphone had been accessed and the data had finally been successfully extracted. That evening, government counsel alerted defense counsel via email about the recent developments: that the FBI was recently able to unlock the defendant's cellphone and that the FBI was still processing an evidence copy of the phone's contents. Government counsel advised that the content from the phone would be provided to the defense as soon as it was available.

The next day, June 2, 2023, the FBI electronically provided the government with copies of materials that agents had identified during a preliminary "scoping" review, that is, a review to identify materials falling within the scope of the search warrant, and the government provided those files to defense counsel through a USAfx file share upload. That USAfx upload included 21 short videos and a pdf extraction report containing approximately 37 pages of chat conversations and 103 pages of images. Those materials consisted of photographs and videos taken in the vicinity of the U.S. Capitol building on January 6, 2021, as well as messages that the defendant exchanged during and about the events of January 6.

On June 5, 2023, government counsel informed defense counsel that a full copy of the entire cellphone contents (which could not be shared via USAfx) had been loaded on to a hard drive and was ready to be sent to defense counsel. After defense counsel provided a mailing address, the FBI immediately shipped the drive directly to defense counsel, who received it on June 6, 2023.

## ARGUMENT

Calling the government's prompt production of materials from her cellphone "a shocking disregard of the rules regarding discovery as well as the Defendant's right to due process and effective assistance of counsel," and alleging that this production violated both Rule 16 and the government's *Brady* obligations, the defendant now asks the Court to dismiss the case or exclude evidence. Def.'s Mot. at 4-7. The defendant's argument is wrong and her request is not supported by the facts or the law. Indeed, the defendant does not identify evidence that would be subject to *Brady* or explain how the production would have violated Rule 16. Ultimately, the defendant cannot do those things, because the government's production of recently unlocked files from the defendant's cellphone was consistent with and not in violation of the government's discovery obligations.

In this case, it is clear, first, that the government immediately produced materials from the defendant's cellphone, which government had only recently been able to unlock. It is also apparent that the material that was accessed (which the defendant seeks to suppress) is, if anything, inculpatory, not exculpatory. Finally, the defendant could not prejudiced by the timing of the production, because the government made the production as soon as possible after the phone was unlocked and the materials are from *her own phone*, the contents of which she presumably has knowledge.

For the defendant to establish a *Brady* violation, she would have to show that the government actually suppressed evidence. *See United States v. Clarke*, 767 F. Supp. 2d 12, 40 (D.D.C. 2011). This defendant has not shown, or even claimed, that the government suppressed any evidence, and it is not enough for her to argue that the timing of the production was inconvenient. *Id.* If defense counsel is "able to make effective use of the tardily disclosed evidence at trial, then a *Brady* violation will not be found." *Id.* at 41. In essence, a *Brady* argument like the defendant's "cannot succeed[]" where "the evidence was disclosed in time for [defense] counsel to make effective use of it." *Id.* at 40 (holding that the disclosure of certain materials mid-trial afforded the defendant sufficient opportunity to make effective use of them). Ultimately, and despite her rhetoric, the defendant has not identified, or even described, an actual *Brady* violation, because she has not identified any *Brady* material and the government produced the materials at issue as soon as the government obtained access to them.

Moreover, although the FBI was unable to access her cellphone until recently, the contents of the phone were well known to the defendant herself because it was *her own phone*. She is aware of, and even created, its contents. She also is the one who effectively precluded access to those contents in refusing to provide the passcode. Had there been essential evidence on the phone that the defendant thought would aid her at trial, she had the ability to enable the FBI to unlock the phone at any point as part of a Rule 16 request. *See* Fed. R. Crim. P. 16(a)(1)(D). She did not do that.

Once the FBI obtained the capability to unlock the phone without the passcode and downloaded a viewable version of its contents, the FBI quickly conducted an initial review, identified relevant materials, and, on June 2, 2023, provided those files to government counsel. Government counsel immediately produced those files to defense counsel—even prior to

conducting their own review of these materials. And, the FBI also produced a drive that contained the complete download of the defendant's phone as soon as that was possible.[1]  Thus, defense counsel cannot—and does not attempt to—show that he has had an insufficient opportunity to inspect the cellphone's relevant content. Indeed, while the defendant could have, perhaps, sought a brief delay in the trial "to give [her] time to review new materials that became available[,]" *see Clarke*, 767 F. Supp. 2d at 38, the defendant has not made that request, claiming, instead, that "[t]he Defendant is not seeking a continuance of the trial of this matter[,]" Def.'s Mot. at 7 (emphasis in original). The remedy she would prefer, however, is not one supported by these facts or the law.

For the reasons stated above, the defendant's motion should be denied.

## RESPONSE TO THE COURT'S JUNE 6 MINUTE ORDER

The government is prepared and intends to proceed to trial on the pending charges on Monday, June 12, 2023. In its preliminary review of the contents of the defendant's cellphone, the government was able to identify materials responsive to the search warrant and relevant to the pending charges. However, as discussed above, the government has had access to the contents of the cellphone for only a week and, therefore, has not been able to review completely the entire contents of the cellphone or to meaningfully evaluate if additional charges are warranted.

The government submits that it could use the contents of the defendant's cellphone to charge her with additional crimes after trial on the four charged misdemeanor counts. Doing so would not violate the Double Jeopardy Clause, which "does not prohibit twice placing a person 'for the same conduct or actions.' Instead, the clause focuses on whether successive prosecutions

---

[1] Defense counsel did not identify any issue with the hard drive he received prior to filing his motion. By defense counsel's own admission, a simple "SATA to USB adapter" would fix his problem with the hard drive. He does not claim any difficulty with the files provided on USAfx.

are for the same 'offence.'" *Denezpi v. United States*, 142 S. Ct. 1838, 1844 (2022) (quoting

*Gamble v. United States*, 139 S. Ct. 1960, 1965 (2019)).  Thus, if the defendant is convicted at trial

of the four misdemeanors with which she is currently charged, the Double Jeopardy Clause would

not prevent the government from prosecuting her for additional crimes so long as each of the

current and additional offenses require proof of a fact that the other does not.  *See, e.g., Texas v.*

*Cobb*, 532 U.S. 162, 173 (2001) (explaining that test from *Blockburger v. United States*, 284 U.S.

299 (1932), "delineate[s] the scope of the Fifth Amendment's Double Jeopardy Clause").  And if

the defendant is acquitted of one or more of the misdemeanor counts, double jeopardy would allow

the government to charge her with additional crimes so long as a prosecution for those crimes did

not require the government to "relitigate any issue that was necessarily decided by [the] acquittal

in [the] prior trial." *Yeager v. United States*, 557 U.S. 110, 119 (2009).

<div style="margin-left: 40%;">

Respectfully submitted,

MATTHEW M. GRAVES
United States Attorney
D.C. Bar Number 481052

*/s/ Christopher Brunwin*
CHRISTOPHER BRUNWIN
California Bar No. 158939
Assistant United States Attorney, Detailee
United States Attorney's Office
Central District of California
312 N. Spring Street
Los Angeles, California 90012
(213) 894-4242
christopher.brunwin@usdoj.gov

*/s/ Nathaniel K. Whitesel*
NATHANIEL K. WHITESEL
Assistant United States Attorney
DC Bar No. 1601102
601 D Street NW
Washington, DC 20530
(202) 252-7759
nathaniel.whitesel@usdoj.gov

</div>