# United States District Court
# District of Columbia

| | |
|---|---|
| United States of America | ) |
| | ) |
| vs. | ) Case No. 1:22-CR-00038-BAH |
| | ) |
| Jolene Eicher | ) |

## Defendant's Sentencing Memorandum

Matthew Hill
Assistant Federal Public Defender
201 Abingdon Pl
Suite 201
Abingdon, VA  24210

Jolene Eicher prays the Court sentence her to 18 months of probation with 60 days of home detention.  Here is why that is a just sentence:

Jolene Eicher is 32 years old.    She has no criminal history and zero criminal history points.  (PSR ¶¶42-44)  Her conduct on most of two years of pretrial release has been impeccable.  (PSR ¶8)

Ms. Eicher is an observant Mennonite who regularly attends church services.  One of the principles of the Mennonite faith is non-violence.  She has many supportive immediate and extended family members.  (PSR ¶¶49-53)

While the Court has stated general awareness of the actions of many others on January 6, the Court should not factor the conduct of others into the 18 U.S.C. §3553(a) analysis.  There is no evidence that Jolene Eicher was violent on January 6, 2021.

Ms. Eicher is and has been gainfully employed in the community.  This employment includes several years as a paramedic with a local ambulance service.  (PSR ¶68)  Before being in the paid service of the ambulance service she also served the community there as a volunteer.  Ms. Eicher has further volunteered her time to Straight Paths Foundation. (letter of support from Stutzman)

Ms. Eicher was forced to resign from her career at the ambulance service because of the events of January 6.  Still, having left the ambulance service Ms. Eicher has remained employed within the community with glowing reports from her employer.  (PSR ¶¶64-68)  These are some of the history and characteristics of Jolene Eicher.

The circumstances of this offense were presented at trial. The facts presented showed that Jolene made a plan a day or two before January 6, 2021 to go to Washington DC to attend the "stop the steal" rally promoted by the former president. Unlike some persons convicted of crimes on January 6, there was no evidence presented that Jolene had extensive plans to go to the Capitol grounds; that she went to DC planning to enter the Capitol building; or that she went to the district with a plan to impede and interfere with government business and official functions.

There was no evidence that Ms. Eicher was violent towards anyone. There was no evidence that she destroyed property. There was no evidence that Ms. Eicher shouted.

It is beyond question that Donald Trump spent a substantial portion of his presidency telling people that facts reported by the press were not facts. His remarks at the ellipse began, "Media will not show the magnitude of this crowd." He continued to deride "the media" with his remarks calling them the single biggest problem and questioned the veracity of facts throughout his remarks. Jolene Eicher walked from that speech towards the Capitol.

The evidence presented at trial, consistent with the jury verdict, show Ms. Eicher present on the Capitol grounds; entering the Capitol building; taking a few steps to the center of the hallway; raising her cell phone to snap a few photos; and then leaving the building. This is precisely the person her family knows. A woman who is impulsive, curious, and adventurous. (Letter of support Ruth Eicher) Jolene

was curious about what was true. A truth which Donald Trump had told her—and the nation—she could not believe would come from the media. She saw for herself. She did not have a blue flag, she did not wear a red hat. She did not shout. She did not damage property. She was peaceful. These are the circumstances of this offense.

The nature of this offense is complicated. The former president spoke at the "stop the steal" rally where he encouraged attendees, like Ms. Eicher, to go to the Capitol. At that rally the former president repeated lies about the 2020 presidential election. Lies recited within his indictment. An indictment on which he is awaiting trial. His crimes are crimes against the people. Ms. Eicher—one of the people—was an unwitting pawn in the former president's criminal enterprise.

The proposed sentence is a restraint on Ms. Eicher's liberty. Home detention is punishment. Her movement will be restricted. Her movement will be monitored. Monitored by a United States Probation Officer. A term of probation and supervision by a United States Probation Officer is a restraint on her liberty. Both satisfy the purposes of general and specific deterrence, 18 U.S.C. §3553(a)(2)(B) & (C). This supports the proposed sentence.

There are outstanding objections to the guidelines as calculated within the Final PSR. Should the Court grant those objections the final guideline range will be 0-6 before considering forthcoming amendments as discussed below.

The United States Sentencing Commission has proposed amendments to the sentencing guidelines. Those amendments go into effect on November 1, 2023.

These amendments were proposed after the considered judgment and evaluation of the required factors by the Sentencing Commission. The amendments will take effect absent action by Congress. Counsel is not aware of any contemplated action by the legislature to override these actions by the Sentencing Commission. That is if Ms. Eicher were to be sentenced on or after November 1, 2023, the guideline range will be lower, and the Court would be urged to not order a sentence of imprisonment.

If the Court is unwilling to calculate the guidelines based on these forthcoming amendments the Court should factor the changes in crafting a sentence and vary from the guideline range. If the Court is further unwilling to consider a variance to conform with the changes Ms. Eicher would move the Court to continue the sentencing in this matter until some convenient time after November 1, 2023.

The proposed amendments will create a new guideline section §4C1.1. As set out in an earlier filing Jolene Eicher checks all of the boxes in this new section and she would qualify for the adjustment. With this further two-level reduction in the advisory guidelines Ms. Eicher's range is within zone A even if the Court overrules Ms. Eicher's objections to the probation officer's guideline calculations

The guidelines will have a further addition that should guide the Court's sentencing analysis. There is a new application note for §5C1.1, note 10. This note states that for persons who receive an adjustment under §4C1.1 and their guideline range is in zone A or B of the sentencing table a sentence other than a sentence of imprisonment, in accordance with subsection (b) or (c)(3) of §5C1.1, is generally appropriate. Ms. Eicher's guideline range will be in either zone A or B. Ms. Eicher

should not be sentenced to a term of imprisonment. With these amendments to the guidelines and all of the other points herein the Court should impose the sentence proposed.

Respectfully submitted,

**Mary Maguire**
Federal Public Defender
Western District of Virginia

Matthew Hill
Assistant Federal Defender
Missouri Bar No. 47889
New Hampshire Bar No. 18864
Arkansas Bar No. 2018170
201 Abingdon Pl
Suite 201
Abingdon, VA  24211
(276) 619-6080
Fax:  (276) 619-6090
matt_hill@fd.org

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that this document was filed electronically and a copy will automatically be sent to all counsel of record by the CM/ECF system.

/s/Matthew Hill